CASE 107—ACTION BY SARAH JANE MOONEY AGAINST THE ANCIENT ORDER OF UNITED WORKMEN GRAND LODGE OF KENTUCKY ON A BENEFIT CERTIFICATE.—FEB. 26.

# Mooney v. Ancient Order of United Workmen Grand Lodge of Kentucky.

APPEAL FROM WEBSTER CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS REVERSED.

INSURANCE—MUTUAL BENEFIT CERTIFICATES—INCORPORATION OF BY-LAWS—INSANITY—SUICIDE.

Held: 1. Kentucky Statutes, section 679, requires that the application, charter, and by-laws of an insurance company doing business in the State, or a copy thereof, shall be attached to the policy or certificate. before they can be treated as a part of the contract. A certificate issued by a mutual benefit association contained no stipulation as to suicide, but declared that it was subject to the by-laws of the order, which were not made a part of the certificate. The only provision in the by-laws on the subject of suicide was in the provisions prescribing the

Mooney v. Ancient Order of United Workmen Grand Lodge of Ky.

form of application for membership in the association.    But the application signed by the insured was on a different form, and contained no stipulation as to suicide.    HELD, that the by-laws relating to suicide could not be considered as a part of the certificate, so as to enable the insurer to make a defense based thereon.

2. An insured in a mutual benefit certificate, containing no stipulation as to suicide, committed suicide.    He was about twenty-two years of age.    His father had died four months before. He had no reason to complain of life.    At the death of his father he acted singularly, and continued to so act from time to time.    Some of his friends before he killed himself thought him insane.    His conduct on the night before his death and at the time of the suicide tended to sustain this conclusion. HELD, that the question whether he was sane or insane at the time of the suicide was for the jury.

3. A mutual benefit certificate, payable to a designated beneficiary, and which is silent on the subject of suicide, becomes void if the insured commits suicide when sane.

4. The certificate does not become void if the insured commits suicide when insane.

5. Insured was insane at the time of committing suicide if he was then without sufficient reason to know what he was doing, or to distinguish right from wrong, or if he had not sufficient will power to govern his actions by reason of some insane impulse which he could not control.

PRATT MAHAN & WADDILL, FOR APPELLANT.

POINTS DISCUSSED.

The only defense is an alleged "suicide by-law."    This is unavailing for these reasons, viz.:

1. There is no valid proof of adoption.

2. It is admitted that the grand lodge did not adopt, but there is some incompetent evidence that the supreme lodge had adopted a suicide clause.    The charter requires an adoption by the grand lodge.    Section 5 of charter controls, carrying into effect No. 6 of "objects," and not section 4 of charter relating merely to relief fund meeting No. 5 of "objects."    Besides the powers and rights of supreme lodge under charter were repealed by act of April 3, 1898.    The grand lodge can not delegate this legislative duty to the supreme lodge or to the committee or other agency.

3. The supposed by-law must be interpreted in the light of the report of the "representatives" and made to apply to those persons only who, at the time of obtaining membership

952          KENTUCKY REPORTS.          [Vol. 114

Mooney v. Ancient Order of United Workmen Grand Lodge of Ky.

had an intent to defraud the order by committing suicide. The pleadings make this issue. There is not a scintilla of evidence as to such intent.

4. It is admitted by the pleadings and the journals show that the order intended the suicide clause if adopted to be binding only in the event it was in the application signed by the member.

5. There should be recovery under the very terms of the by-law for the proof is conclusive that the member killed himself in delirium resulting from disease.

6. Under forfeiting clause for suicide, "sane or insane," there can be recovery when the member is so insane when he committed the act as not to comprehend the physical nature and consequences of his act. This issue was made, there was strong evidence on both sides. The jury should have been permitted to pass upon it.

7. A clear case of waiver. Appellee is estopped from setting up the suicide clause.

8. Both the pleadings and the proof entitle plaintiff to her full demand.

9. Plaintiff's demand is just and meritorious. The defense is technical and inequitable. There should be reversal with directions to render judgment for plaintiff for her full claim

### AUTHORITIES.

1. The fund in question must be controlled by "the corporation." Grand Lodge Charter, sec. 5.

The grand lodge can not delegate this duty. Knights of Pythias v. Stein, 37 L. R. A., 775; Knights of Pythias v. La Malta, 30 L. R. A., 838.

3. Suicide clause not part of contract. Waiver. Estoppel. Woodmen of World v. Fraley, 51 L. R. A., 898; Davidson v. Benefit Soc., 1 L. R. A., 482; Manning v. A. O. U. W., 86 Ky., 136; Bacon Ben. Soc., sec. 171, 179, 426; p. 214, 229, 636; Nib. Ben. Soc., sec. 147.

4. Suicide, generally. Mut. Ben. Ins. Co. v. Daviess, 87 Ky., 541; Seiler v. Life Asso., 43 L. R. A., 537; Patterson v. Ins. Co., 42 L. R. A., 253; Adkins v. Ins. Co., 35 Am. Rep., 410; 3 L. R. A., 486; 6 Ib., 495; 32 Ib., 473; 17 Ib., 89 notes; 47 Ib., 681; 17 Am. Rep., 372, 689; 19 Ib., 623; 21 Ib., 549; 46 Ib., 17; 35 Ib., 410; 59 Am. Dec., 482; 89 Ib., 743; 15 Wall., 580; 3 Am. & Eng. Ency., 2d, p. 1016; 3 Joyce Ins., sec. 2653; 2 May Ins. sec. 392; Cooke Ins., sec. 70; Bliss Ins., sec. 330; 2 Phillips' Ins., p. 626.

5. *Read these leading cases.* Woodmen of World v. Fraley,

Vol. 114]        JANUARY TERM, 1903.              953

Mooney v. Ancient Order of United Workmen Grand Lodge of Ky.

51 L. R. A., p. 898; Davidson v. Ben. Soc., 1 L. R. A., p. 482; Manning v. A. O. U. W., 86 Ky., 136; Knights of Pythias v. Stein, 37 L. R. A., p. 775; Knights of Pythias v. La Malta, 30 L. R. A., p. 838; Mut. Ben. Ins. Co. v. Daviess, 87 Ky., p. 541.

YEAMAN & YEAMAN, FOR APPELLEE.

### THE CERTIFICATE SUED ON.

Appellant sued appellee upon the following certificate:

No. 11,777.                    GRAND LODGE,              $2,000.00

ANCIENT ORDER OF UNITED WORKMEN
OF KENTUCKY.

1. This certificate issued by the grand lodge of the Ancient Order of United Workmen of Kentucky, witnesseth that Brother John G. Mooney, a workman degree member of J. L. Dorsey Lodge No. 98, of said order, located at Dixon, in the State of Kentucky, is entitled to all the rights, benefits and privileges of membership in the Ancient Order of United Workmen and to designate the beneficiary to whom the sum of two thousand ($2,000) dollars of the beneficiary fund of the order shall at his death be paid.    This certificate is issued subject to and is to be construed and controlled by the laws of the order.    He designates as beneficiary under the terms hereof Sarah Jane Mooney bearing to him the relation of mother.    In witness whereof the grand lodge has caused this to be signed by its grand master workman and grand recorder and the seal thereof to be attached this 29th day of November, 1899.

JOHN W. BAKER, Grand Master Workman.

Attest: J. G. WALKER, Grand Recorder.

2. The Defense.    The defense was that the person to whom the certificate was issued, John G. Mooney, was admitted to appellee order under his agreement to be governed and to abide by its constitution, by-laws, rules and orders; that at the time of the issual of the certificate sued on, it was provided by said by-laws and constitution that if within two years after the issual of said certificate the member to whom it was issued should come to his death by suicide, whether sane or insane, except in delirium resulting from disease, or while under treatment for insanity, or after a judicial declaration of insanity; then the only sum that should be paid or which is payable to the beneficiary named in the certificate should be the amount that may have been paid into the beneficiary fund of the order by such member.    That said John G. Mooney in less than six months after the issual of said certificate came to his death while sane by voluntarily and intentionally committing

954        KENTUCKY REPORTS.        [Vol. 114

Mooney v. Ancient Order of United Workmen Grand Lodge of Ky.

suicide and destroying his own life by shooting himself with a pistol; that he was not at the time in delirium resulting from disease, nor under treatment for insanity; nor had there been any judicial declaration of his insanity; that during his membership he had paid into the order the sum of $4.80; which was tendered.    It is further pleaded in defense:

"That after the execution and issual of said certificate, he on the —— day of ———— 1900, and within six months after the certificate sued on was issued, while sane, voluntarily and intentionally, for the purpose of destroying his own life, shot and wounded himself with a pistol, of which shot and wound he soon thereafter died, so defendant says it is not true that said Mooney died a workman degree member of said order in good standing, nor that the defendant is justly indebted to the plaintiff in the sum of $2,000 or any sum.

The clause in the constitution of the order referred to in the answer, is as follows:

"I further agree that if within two years after the date of my taking or receiving the said workman degree, my death should occur by suicide, whether sane or insane, except in delirium resulting from disease, or while under treatment for insanity, or after a judicial declaration of insanity, then the only sum which shall be paid, or which is payable to my beneficiaries named in my beneficiary certificate, shall be the amount which I may have paid into the beneficiary fund of the order during the term of my membership."    See page 22 of constitution of A. O. U. W. filed with transcripts.

3. The instructions and verdict.    The following instruction was given to the jury and a verdict returned accordingly:

"The court instructs the jury that it is admitted that John G. Mooney committed suicide within two years after the issual of the certificate sued on, and there being no proof or claim that when he did so he was in a delirium resulting from disease, nor while under treatment for insanity, nor after a judicial declaration of insanity they can therefore only find for the plaintiff the sum of four dollars and eighty cents, the amount that had been paid into the beneficiary fund by the deceased, with interest thereon from March 2, 1900, the date of said Mooney's death, and they will return a verdict for that sum."

4. No other instructions could have been given.    The nature of the appellee order, and its constitution, the certificate in question, and the evidence as to the death of assured made any other instruction impossible.    But if we leave out of view the nature of appellee order and its constitution, then the appellant would not have been entitled to the verdict for the

Vol. 114]        JANUARY TERM, 1903.        955

Mooney v. Ancient Order of United Workmen Grand Lodge of Ky.

$4.80, and the court should have instructed the jury to find for the defendant.

5. Mooney not insane.    The evidence establishes the fact that John G. Mooney intentionally took his own life while sane; when he was "not in delirium resulting from disease, nor while under treatment for insanity nor after there had been a judicial declaration of insanity."    The act was deliberate, intentional, and perpetrated with a full knowledge of all the consequences.

6. Laws of order a part of contract.    The constitution of such an association is its fundamental law, to which all who come within its operation must conform, and the constitution of appellee in this case is to be read into, and becomes a part of the contract sued on.    The very certificate sued on sets forth that it "is issued subject to and is to be construed and controlled by the laws of the order."    Am. & Eng. Ency. Law, 3d ed., vol. 3, p. 1059; Morawetz Priv. Cor., 2d ed., sec. 494; Presby'n Mut'l Assn. Fund v. Allen, 106 Ind., 593; Burgman v. St. Paul Mut., &c., 29 Minn., 278; Sherry v. Plasterers' Union, 139 Pa. St., 470.

The certificate of membership constitutes the contract, but it is to be construed and governed by the company's charter— (The Presbyterian Mutual Assurance Fund).    In fact it may be said that the charter is a part of the contract.    Van Bibber's Admr v. Van Bibber, 82 Ky., 184.

And the charter or constitution will be construed liberally so as effectuate the objects of the order.    Van Bibber's Admr. v. Van Bibber, 82 Ky., 347; Woolford's Appeal, 126 Pa. St., 47; Messen v. Mut. Ref. Sec., 102 N. Y., 523; Supreme Comy., &c. v. Ainsworth, 46 Am. Rep., 332.

And by-laws enacted by Mutual Benefit Association avoiding payment of a policy if the assured dies by suicide either sane or insane, binds its members whose contracts require compliance with all laws, "now in force or that may hereafter be enacted by the supreme lodge."    Supreme Lodge, &c., v. Trebble, 179 Ill., 348.

7. Suicide raises no presumption of insanity.    The law presumes sanity and insanity will not be presumed from the fact of suicide.    "The burden of proving insanity is upon the party offering it, and opinions of witnesses based upon their observations of the mental condition of the insured previous to the suicide, and not formed upon knowledge or observation of his facts or condition at the time of suicide, have no tendency to prove that the killing was involuntary."    Weed v. Mut. B. & L. Ins. Co., 70 N. Y., 561; Joyce on Ins., vol. 4, sec. 3775; Meacham v. N. Y. Mut. Assn., 120 N. Y., 237; McCline v. Mut. L. Ins.

Co., 55 N. Y., 65; Breasted v. L. & T. Co., Am. Dec., 496, and note 7, citing many cases.

Mr. Justice Miller in his charge to the jury, says, "There is no presumption of law, *prima facie* or otherwise, that self destruction arises from insanity." Terry v. Ins. Co., 1 Dill. (C. C.) 40, 15 Wall., 580; Merritt v. Cotton State Ins. Co., 55 Ga., 103; Knickerbocker Ins. Co. v. Peters, 42 Md., 414; Weed v. Mutual, &c., 35 N. Y. Super Ct., 386; Hathaway v. National, &c., 48 Vt., 335.         ،

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellee, the Ancient Order of United Workmen, is a corporation created by the laws of Kentucky. It consists of a supreme lodge and subordinate lodges. A beneficiary fund is set apart for the benefit of the families or heirs at law of deceased members. Benefit certificates are issued to the members, and they have the right of naming their beneficiaries. It is a fraternal association, governed by the lodge system under the supervision of a supreme lodge, which pays no commissions and employs no agents, except in the organization of local subordinate lodges and supervising their work. John G. Mooney held a certificate in the order, and while in regular standing shot himself on March 2, 1900. His mother was named as his beneficiary, and sought in this action to recover of the order on the benefit certificate. The defendant resisted recovery on the ground that the assured while sane voluntarily took his own life and at the conclusion of the evidence, the court peremptorily instructed the jury to find for the defendant. The certificate sued on is in these words: "This certificate, issued by the Grand Lodge of the Ancient Order of United Workmen, of Kentucky, witnesseth: That Brother John G. Mooney, a workman degree member of John L. Dorsey Lodge, No. 98, of said order, located at Dixon, in the State of Kentucky, is entitled to all the rights, benefits, and privileges of membership in the Ancient Order of United Workmen, and to designate the beneficiary to

whom the sum of two thousand dollars of the beneficiary fund of the order shall, at his death, be paid. This certificate is issued subject to, and is to be construed by, the laws of the order. He designates, as beneficiary under the terms hereof, Sarah Jane Mooney, bearing to him the relation of mother. In witness whereof the Grand Lodge has caused this to be signed by its Grand Master Workman and Grand Recorder, and the seal thereof to be attached this 29th day of November, 1899. John W. Baker, Grand Master Workman. J. G. Walter, Grand Recorder." It will be observed that there is nothing in the certificate in regard to suicide, or providing that the company shall not be liable if the assured killed himself. It was, however, pleaded by the defendant that this was stipulated in the laws of the order, and that by the terms of the certificate it is to be construed and controlled by these laws. The only thing in the laws of the order on the subject is in section 8, article 10, of the by-laws, which, among other things, prescribes a form of application to be used by applicants for membership. In this form so prescribed, these words are used: "I further agree that if, within two years after the date of my taking or receiving the workman degree, my death should occur by suicide, whether sane or insane, except in delirium resulting from disease, or while under treatment for insanity, or after a judicial declaration of insanity, then the only sum which shall be paid, or which is payable, to my beneficiaries named in my beneficiary certificate, shall be the amount which I may have paid into the beneficiary fund of the order during the term of my membership." But the application which the deceased in fact signed was on a different form, and was in these words: "November 29, 1899. To the Grand Lodge of Kentucky: I, John G. Mooney, having made application for the workman degree in John L. Dorsey Lodge,

958        KENTUCKY REPORTS.        [Vol. 114

Mooney v. Ancient Order of United Workmen Grand Lodge of Ky.

No. ——, Ancient Order of United Workmen, State of Kentucky, do hereby agree that compliance on my part with all the laws, regulations, and requirements which are or may be enacted by said order is the express condition upon which I am to be entitled to have and enjoy all the rights, benefits, and privileges of said order. I certify that the answers made by me to the questions propounded by the medical examiner of this lodge, which are attached to this application, and form a part thereof, are true. I further agree that the beneficiary certificate to be issued hereon shall have no binding force whatever until I shall have taken the workman degree of said order, and until my medical examination has been approved by the Supreme or Grand Medical Examiner, as the case may be. I hereby authorize and direct that the amount to which my beneficiaries may be entitled, to-wit, $2,000.00 of the beneficiary fund of the order, shall, at my death, be paid to Mrs. Sarah Jane Mooney, bearing relation to me of mother."

It would seem from the evidence that the by-law providing for the form of application above quoted was of recent adoption, and that forms of application made out according to it had not been sent out to the subordinate lodge at the time the deceased joined. The proof on this subject is not clear; but, however it may be, he in fact used the old form, and, so far as the proof shows, knew nothing of the other form. We are therefore of opinion that his contract can not be tested or in any way affected by a mere form of application which had been ordained by the Grand Lodge, but which was not in fact used in his case. In the Supreme Commandery of the United Order of the Golden Cross v. Hughes 114 Ky., 175 (24 R., 984), 70 S. W., 405, it was held that section 679 of the Kentucky Statutes is applicable to societies such as appellee, and that the application for the certificate

or the by-laws or other rules of the corporation, unless at-
tached to and accompanying the certificate, can not be re-
ceived in evidence or considered a part of the contract in
any controversy between the parties interested in the certi-
ficate.   As the by-law in question was not made a part of
the certificate or attached to it, it can not be considered,
and the defense to the action based on this by-law can not
be maintained.   The peremptory instruction of the circuit
court to the jury to find for the defendant by reason of the
by-law was, therefore, erroneous.

There being nothing in the certificate in regard to suicide,
the question remains, is it a defense to the action that the
deceased while sane voluntarily killed himself?   The proof
shows that the deceased was about 22 years old; his father
had died four months before, leaving the deceased, his moth-
er, and a younger brother surviving him; the deceased had
been made postmaster in the room of his father at the
town of Dixon, Webster county.   He had no other insurance
on his life.   His health was good.   So far as the evidence
goes, he had no reason to complain of life.   At the death
of his father, he had acted very singularly, and this he
had kept up from time to time since.   Not a few of his
friends before he shot himself thought him of unsound mind.
His conduct on the night before his death and at the time
of the shooting tended to sustain this conclusion, and
there was sufficient evidence to go to the jury on the ques-
tion as to whether he was sane or insane at the time.   The
rule as to suicide where the policy is silent on the subject
is thus well stated in 19 Amer. & Eng. Ency. of Law, page
73:  "If the insured in a contract of life insurance, taken
out for the benefit of his estate, or payable to a beneficiary,
the designation of whom may be changed at the option of
the insured with the consent of the insurer, commits suicide,

the policy is void if the insured was sane when he took
his own life, and this for two reasons: In the first place,
every contract of life insurance must be construed to con-
tain an implied condition that the insured will not inten-
tionally terminate his life, but that the insurer shall have
the benefit of the chances of its continuance until terminated
in the natural ordinary course of events. It, is upon these
chances that the premium is calculated and the contract is
founded; hence the suicide of the insured operates as a
fraud upon the insurer, and especially is this so when the
insurance is taken out in contemplation of the act. In the
second place, the enforcement of the contract in case of
death by suicide is opposed to public policy. If the con-
tract should expressly include death from this cause, the
provision, even if not prohibited by statute, would be con-
trary to public policy, in that it tempted or encouraged
the insured to commit suicide, and it is obvious that the
court will not imply a condition which if expressed in the
contract would render it void. But when the policy is
made payable to a nominated beneficiary, and contains no
stipulation that it shall be void in case of the death of the
insured by suicide, it may be enforced, notwithstanding the
insured dies by his own hand, unless, perhaps, where the
policy was taken out in contemplation of suicide." See
also, to this effect, Hartman v. Keystone Mutual Life In-
surance Co., 21 Pa., 466; Smith v. National Benefit Society,
123 N. Y., 85, 25 N. E., 197, 9 L. R. A., 616; Ritter v.
Mutual Life Insurance Co., 169 U. S., 139, 18 Sup. Ct., 300,
42 L. Ed., 693; Knights Golden Rule v. Ainsworth, 46 Am.
Rep., 332; Bliss, Life Insurance, section 242. Note to
Breasted v. Farmers' Loan & Trust Co., 59 Am. Dec., 487.

It is earnestly insisted that if the insured, when he fired
the fatal shot, had sufficient mental power to know that it

would take his life, and fired the shot with that intention, there can be no recovery. We are referred to authorities so holding under certain policies containing stipulations as to suicide when insane, but we do not think this rule applicable to a case where the policy is entirely silent. The only reason that the death of the insured by his own hands is allowed to defeat the policy in such a case is, in the end, that it is a fraud on the company. But there can be no fraud by one who is insane. Those who issue such policies know that men are liable to become insane, and that insane persons at times commit suicide. If they wish to protect themselves from this risk, they should so provide in their policies. Where the policy is silent, we are unwilling to go beyond the rule above laid down exempting the company from responsibility where the insured voluntarily kills himself while sane. For the contract of insurance must be treated like any other contract, and the act of an insane person is not a defense to actions on any other contract, so far as we know. Under the evidence, the court should have submitted to the jury the question whether the assured voluntarily killed himself while sane. We intimate no opinion as to what should be the rule where the policy has, under the terms of the policy, become incontestable. The deceased was insane at the time of the shooting if he was then without sufficient reason to know what he was doing, or to distinguish right from wrong, or if he had not then sufficient will power to govern his actions, by reason of some insane impulse (the result of mental unsoundness) which he could not resist or control.

Judgment reversed, and cause remanded for a new trial.