CASE 47—ACTION BY LOUISA HUNZIKER AGAINST SUPREME LODGE KNIGHTS OF PYTHIAS, FOR AMOUNT OF INSURANCE POLICY ON HER DECEASED HUSBAND.—JAN. 22.

# Hunziker v. Supreme Lodge K. of P.

APPEAL FROM FULTON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.  REVERSED.

INSURANCE— CERTIFICATES— BY-LAWS— ATTACHMENT— STATUTES — CONSTRUCTION—SUICIDE—INSANITY.

Held:  1. Kentucky Statutes 1903, section 679, provides that all policies issued to persons within the Commonwealth by corporations transacting business therein, which contain only reference to the application of the insured or the by-laws, or to the rules of the corporation having any bearing on the contracts, shall contain or have attached a correct copy of the portions of the by-laws referred to, and, unless so attached, no such by-laws shall be received in evidence in any controversy between parties interested.  HELD that, where a certificate issued before the enactment of such act contained no reference to suicide,

but the insurer, after the passage of the act, passed a by-law that in case a member died by his own hand the company should be liable only for a proportionate amount of the policy, but such by-law was not called to insured's attention nor attached to the policy, it was no defense to an action thereon.

2. Kentucky Statutes, 1903, section 679, providing that the by-laws of any insurance company shall not be received in evidence nor considered a part of an insurance contract unless contained in or attached to the certificate, affects the remedy only to the interfering with contract rights.

3. Though suicide by insured while sane is a breach of an implied extent of establishing a rule of evidence, and is not invalid as condition in a policy that insured will not intentionally terminate his life, suicide while insured is insane is no defense to a policy containing no provisison against suicide.

ROBBINS & THOMAS, FOR APPELLANTS.

1. At the time the policy in question was taken out, December 31, 1888, there was no by-law against suicide nor was there any stipulation in the policy against it, but a by-law was enacted by the lodge in August or September, 1896, providing that if any member committed suïcide, voluntary or involuntary, sane or insane, the amount to be paid under such policy as decedent held should be curtailed according to stipulations therein made.

2. This by-law was never attached to or offered to be attached to the policy held by decedent and was passed after section 679, Kentucky Statutes, was enacted.

3. Appellee admitted liability under said by-law to the extent of $942.60, but appellants contend that under the stipulations of said by-law, if to be enforced, the amount due was $1,036.40. The policy was for $2,000.

4. While we admit that without any stipulation in the contract, suicide while sane, is a defense to a life insurance policy, because against public policy. It, however, is furthermore the law in Kentucky, that in the absence of a stipulation against suicide while insane, such act committed under the circumstances stated in the reply is no defense.

5. But the serious and vital question is whether appellee can rely upon the by-law in question having failed to attach or offer to attach it to the policy, conceding that it was competent to pass such a by-law?

6. The certificate sued on in this case, as modified by the by-law in question, became a new question from the time said by-law was passed. It matters not from whence the right to

Hunziker v. Supreme Lodge K. of P.

pass such by-law originated, and the fact if it should be a fact that the certificate at the time it was issued by the agreement of the parties thereto, agreed that such a by-law should be passed, still when passed it modified and qualified the old contract and made a new one, which, being against public policy and against section 697, Kentucky Statutes, can not be enforced.

### AUTHORITIES CITED.

Kentucky Statutes, sec. 679; Mooney v. Ancient Order of United Workmen, 24 R., 1787; Park v. McReynolds, 23 R., 894; Sutherland on Stat. Construction, sec. 478; Provident Sav. Life Assn. So. v. Puryear, 22 R., 980; Wright v. Gardner, 17 R., 1345; Bishop on Contracts, Enlarged Edition, secs. 439; 447, 473, 474.

B. T. DAVIS, C. S. HARDY AND WALTER LINCOLN, FOR APPELLEE.

1. We contend that by section 679, Kentucky Statutes, the Legislature did not intend that it should apply in any manner to any policies or certificates issued prior to its enactment, and only intended it should apply to such as contained a reference to the application of the insured or the constitution or by-laws of the corporation issued after the passage of the enactment of said section.

2. It is a well established principle that corporations have a right to enact by-laws for the government of its business and members. A member of the corporation being charged with notice of such duly enacted by-laws, we insist that such by-law, even though affecting the rights of the party, need not be attached to the policy under section 679, as forming a part of it.

3. It is not denied in the reply that the death of insured resulted from wounds from pistol shots inflicted by his own hands, for the purpose of causing his death, and it is not alleged in the reply that at the time he committed the act his mind was so far gone as to render him unconscious that he was taking his own life.

4. By the words "voluntary or involuntary" in addition to the provision "while sane or insane," should be construed to embrace every act of self-destruction whether voluntary or not, or intentional or not.

5. The allegation of the reply that the amount due is $1,036.40, and not $942.60 as alleged in the answer, is not sufficiently

plead, and is not a sufficient allegation that the expectancy of the life of insured was more than 26.91 years.

6. The difference is below the jurisdiction of this court.

### AUTHORITIES CITED.

Kentucky Statutes, 679; Fullenwider v. Royal League, 180 Ill., 625; Sup Council of A. v. Winter's Ad., 21 R., 1583; Niblock on Ben. Soc. & A. I., sec. 26; Sup. Tent. v. Stensland, 105 Ill App., 269; Sup. Tent. v. Hammers, 81 Ill. App., 560; Sup. Lodge K. of P. v. Clark, 88 Ill. App., 600; Biglow v. Berkshire L. Ins. Co., 93 U. S., 284; Mut. Ben. Life Ins. Co. v. Davis' Exr., 87 Ky., 541; Man. Life Ins. Co. v. Beard, 22 R., 1747; Haynie v. Knights' Indem. Co., 41 S. W., 461; Bascom v. Zediker, 48 Neb., 380; Armstrong v. Best, 112 N. C., 60; 22 Ency. of Law, 2d ed., 1324; Civil Code, sec. 126.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

Gustave Hunziker died in the city of Hickman, Fulton county, this State, November 30, 1902, of pistol-shot wounds inflicted by his own hand.    He left, surviving him, a wife, Louisa Hunziker, and a daughter, Linda Hunziker, who is his only child.    Many years before his death, Gustave Hunziker, then, as at the time of his death, a resident of Hickman, became a member of a lodge in that city of the secret fraternal order known as the "Knights of Pythias," the governing or chief body of which is styled "Supreme Lodge Knights of Pythias."    This governing body is in control of all subordinate lodges of the order, and of what is known as the "Endowment Rank," which provides insurance for its members.    On December 27, 1888, Gustave Hunziker became a member of this endowment rank, and by signing the necessary application, and paying to the Supreme Lodge Knights of Pythias the required membership fee, he received of it a certificate or policy of insurance, No. 21,021, whereby it agreed, in consideration of the statements contained in the written application attached to the policy, the payment of

the prescribed admission fee, and the payment thereafter by the insured of all assessments as required, to pay to Louisa and Linda Hunziker, his wife and daughter, or to such other person or persons as he might thereafter direct, the sum of $2,000 upon due notice and proof of the death of the insured. After the death of Gustave Hunziker, due notice and proof of which was furnished the Supreme Lodge Knights of Pythias, it refused to pay the beneficiaries in the policy the $2,000 of insurance named therein, but did offer to pay them $942.60 which they refused to accept.    Thereupon this action was instituted in the lower court by the appellants, beneficiaries, to recover of the appellee, Supreme Lodge of Knights of Pythias, the $2,000 claimed by them under the policy.

The facts as herein stated are in substance set forth in the petition, to which the appellee's answer interposes the defense that the insured, Gustave Hunziker, in entering into the contract of insurance, evidenced by the policy or certificate sued on, agreed, as recited therein, to be controlled by all the rules and regulations of the order, governing the endowment rank, then in force, or that might thereafter be enacted, and that the appellee, at its biennial convention held in Cleveland, Ohio, August 25 to September 3, 1896, enacted in due form, for the government of the endowment rank, a by-law to the effect that if the death of any member of the endowment rank, theretofore or thereafter admitted into the first, second, third, or fourth class, should result from suicide, voluntary or involuntary, whether such member be sane or insane at the time, the amount to be paid upon such member's certificate should be a sum only in proportion to the whole amount as the matured life expectancy might be to the entire expectancy at the date of the admission into the endowment rank, the expectation of life

based upon the American Experience Table of Mortality in force at the time of the death to govern.    It is also averred in the answer that the by-law enacted in 1896 was in force at the date of the death of the insured, that his death resulted from pistol shot wounds inflicted by his own hand for the purpose of causing his death, and that he was in the fourth class of the endowment rank.    It is further averred in the answer that, according to the American Experience Table of Mortality in force at the date of the death of Gustave Hunziker, his expectation of life at the date of his admission into the endowment rank was twenty-nine and sixty-two one-hundredth years, that he lived thirteen and ninety-six one hundredth years thereafter, and therefore the amount due on the policy sued on was $942.60, and for this amount appellee offered to confess judgment. A demurrrer was filed to the answer, and overruled by the court, to which appellants excepted.    They then filed a reply in which it is averred that the by-law of September 3, 1896, mentioned in the answer, was adopted by the appellee after the enactment of section 679, Ky. St., 1903, and was never attached to the policy, or certificate sued on, nor any copy thereof so attached or, offered to be attached to the policy, or delivered or offered to be delivered to appellants or the insured,    nor    did    they    or    the    insured    ever    hear or receive notice of the alleged enactment of such a by-law. It is further averred in the reply that the insured, at the time of the infliction upon himself of the wounds of which he died, "was insane, and did not have sufficient reason to know what he was doing, or to distinguish right from wrong, and did not then have sufficient will power to govern his actions by reason of his mental unsoundness, and which insane impulse, governing him at the time, he could not then resist or control."    A demurrer was filed by appellee to the reply,

which was sustained by the court, to which appellants excepted. Judgment was thereupon entered in appellants' favor for only $942.60 of the amount claimed by them, with interest from January 29, 1903, and costs up to the time of appellee's offer to confess judgment for the $942.60. Of that judgment the appellants complain, and its reversal is asked at the hands of this court.

It is admitted by the appellants that the insured committed suicide; therefore it is insisted for appellee that, according to the terms of the certificate or policy accepted by the insured, his contract with it was governed not only by the laws of the association then in force, but also such as might thereafter be enacted by the appellee, supreme lodge, for which reason the by-law enacted by it in 1896 was also binding upon him, and, inasmuch as it provides that if any member of the endowment rank commit suicide—whether the act be voluntary or involuntary, or such member at the time be sane or insane—it shall serve to reduce the amount due the beneficiaries named in the certificate or policy from $2,000, to a sum only in proportion to that amount as the matured life expectancy might be to the entire expectancy at the date of admission into the endowment rank, according to the American Experience Table of Mortality in force at the time of death, it follows that appellants are only entitled to receive $942.60, and it was upon this theory that the lower court acted in rendering the judgment appealed from.

It is, however, contended by the appellants that the by-law of September 3, 1896, can not affect their rights under the certificate of insurance, because it was adopted by the appellee subsequent to the enactment of section 679 of the Kentucky Statutes, and never attached to the certificate as provided therein. The statute, supra, provides:

"All policies or certificates hereafter issued to persons within the Commonwealth by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured, or the constitution, by-laws, or other rules of the corporation, either as forming part of the policy or contract between the parties thereto, or having any 'bearing on said contract, shall contain or have attached to said policy or certificate a correct copy of the application as signed by the applicant, and the portions of the constitution, by-laws, and other rules referred to; and unless so attached and accompanying the policy, no such application, by-laws, or other rules, shall be received in evidence in any controversy between the parties to, or interested in, said policy or certificate, and shall not be considered a part of the policy or of the contract between such parties. . . ." There is nothing in the certificate of insurance received by Gustave Hunziker from the appellant, or in the 'application attached thereto, in regard to suicide, or providing that the appellee's liability shall be limited to an amount less than the sum named in the certificate if the insured took his own life.    This stipulation had no existence until the enactment in 1896 of the by-law set out in the appellee's answer, and which though adopted after the enactment of the section of the statute supra, has never been attached to or made a part of the certificate.    It appears from the averments of the reply, which upon the demurrer must be taken as confessed, that neither the insured nor the appellants ever received or saw a copy of the by-law in question, or heard of its existence.

In the cases of the Supreme Commandery of the United Order of the Golden Cross v. Hughes (114 Ky., 175, 24 R., 984) 70 S. W., 405, and Mooney v. Ancient Order United Workman (114 Ky., 950, 24 R., 1787) 72 S. W., 288, it

was held that section 679, Ky, St., 1903, is applicable to societies such as that of appellee, and that "the application for the certificate, or the by-laws, or other rules of the corporation, unless attached to or accompanying the certificate, can not be received in evidence, or considered a part of the contract, in any controversy between the parties interested in the certificate. . . ." The rule thus stated follows the language of the statute, the provisions of which are mandatory. The by-law claimed to have been adopted by the appellee, not having been attached to or made a part of the certificate or policy sued on, can not be relied on to limit the appellee's liability, or reduce the recovery below the maximum amount named in the certificate. The fact that the by-law was enacted after the certificate was issued did not relieve the appellee of the duty of causing it to be attached to the certificate after its enactment, as required by the statute. In Mooney v. Ancient Order United Workmen, supra, the by-law relied on to defeat the action was also enacted after the issual of the certificate, yet, as we have already indicated, it was held that it could not be set up as a defense, because it had never been attached to the certificate.

Counsel for appellee contends that the statute, supra, because of the words "all policies hereafter issued," has no application to a policy (certificate) that, like the one on the life of Gustave Hunziker, was issued before its enactment. That question is not before us for adjudication. We have only decided that the statute does apply to the by-law relied on by appellee, as it was adopted after the enactment of the statute, and its purpose and effect was to materially alter the original contract of insurance, for which reason it was required by the provisions of the statute to be attached to the original contract or certificate. It may be remarked, however, that, as the statute in question is pro-

motive of justice and 'a sound public policy, much might be said in favor of extending its provisions to policies and certificates issued before as well as after its enactment, notwithstanding its use of the words "hereafter issued." Indeed, authority is not wanting to sustain this view of its meaning. In Park v. McReynolds, 111 Ky., 651, 23 R., 894, 64 S. W., 517, this court, in discussing section 2358, Ky St., 1899, which provides for the filing in the county clerk's office of a notice of liens acquired by attachment, judgment, or execution, etc., "hereafter issued," said: "It seems to us that the act in question applies to all executions and attachments and suits and judgments, whether issued or instituted before or after the enactment." The statute under consideration is one that affects the remedy to the extent, at least, that it establishes a rule of evidence. It does not interfere with the right of insurance companies to pass such a by-law as the one relied on by appellee, but it prevents them from making use of it as evidence, or relying upon it as a part of the contract, in a controversy or lawsuit with one of their policy holders, unless it has been attached to and make a part of the policy. In discussing the power of the Legislature to pass laws affecting the remedy, Sutherland, in section 478 of his work on Statutory Construction, says: "A law which changes the rules of evidence relates to the remedy, and is not within the constitutional inhibition."

Eliminating from the case the by-law upon which appellee relies—and without it there is nothing in the certificate in regard to suicide—there is but one other question to be considered, viz., was the insured sane or insane when he took his own life? If he was sane, in the absence of any stipulation in the contract providing otherwise, his act in taking his own life would release appellee altogether from liability upon the

certificate, and that such is the law is conceded by counsel
for appellants.    But on the other hand, it has been held in
this State—and such seems to be the accepted view of the
law in most of the States—that, in the absence of a stipula-
tion in the contract against suicide while insane, such an act
can not be relied on as a defense by the insurance company.

In Mooney v. Ancient Order United Workmen, supra,
the law on this subject is stated with admirable clearness
in a quotation taken from 19 A. & E. Ency. of Law, p. 78:
"If the insured in a contract of life insurance, taken out
for the benefit of his estate, or payable to a beneficiary the
designation of whom may be changed at the option of the
insured with the consent of the insurer, commits suicide,
the policy is void if the insured was sane when he took his
own life, and this for two reasons:    In the first place,
every contract of life insurance must be construed to contain
an implied condition that the insured will not intentionally
terminate his life, but that the insurer shall have the benefit
of the chances of its continuance until terminated in the
natural, ordinary course of events.    It is upon these chances
that the premium is calculated and the contract is founded;
hence the suicide of the insured operates as a fraud upon
the insurer, and especially is this so when the insurance is
taken out in contemplation of the act.    In the second
place, the enforcement of the contract in the case of death
by suicide is opposed to public policy.    If the contract
should expressly include death from this cause, the provision,
even if not prohibited by statute, would be contrary to public
policy, in that it tempted or encouraged the insured to com-
mit suicide; and it is obvious that the court will not imply
a condition which, if expressed in the contract, would render
it void.    But when the policy is made payable to a nomi-

nated beneficiary, and contains no stipulation, that it shall be void in case of death of the insured by suicide, it may be enforced notwithstanding the insured dies by his own hand, unless, perhaps, where the policy was taken out in contemplation of suicide." As the act of an insane person in taking his own life can not be a fraud upon the insurer, no reason exists why it should invalidate the policy. If the insurance company would protect itself against such a risk, it should so provide in its policy, otherwise it will be liable. It is in substance averred in the reply in this case that the insured was insane at the time of the shooting, and was then without sufficient reason to know what he was doing, or to distinguish right from wrong, and was by reason thereof, without sufficient will power to resist the insane impulse to kill himself. If this be true, the appellee is liable for the amount sued for.

From the foregoing view of the law, it follows that the lower court erred in sustaining the demurrer to the reply. The question of whether the insured was sane or insane at the time of taking his life was one of fact that should have gone, under proper instructions, to the jury. The judgment is therefore reversed, and cause remanded with directions to the lower court to set aside the judgment, and also the order sustaining the demurrer to the reply, and for further proceedings consistent with this opinion.