Case 3.—ACTION BY LOUISA HUNZIKER AGAINST THE SU-
PREME LODGE KNIGHTS OF PYTHIAS ON A POLICY
OF INSURANCE.—June 17.

## Supreme Lodge Knights of Pythias v. Hunziker.

Appeal from Fulton Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Af-
firmed.

1. Beneficial Associations—By-laws—Enactment Subsequent to
   Contract—Ky. Stats. 1903, sec. 679, provides that all life pol-
   icies containing any reference to the application of the in-
   sured or the by-laws of the corporation, or having any bear-
   ing on the contract, shall have attached a correct copy of
   the by-laws referred to, and that unless so attached such by-
   laws shall not be received in evidence in any action on the
   policy. Held—That, where an application for membership in a
   beneficial association provided that the applicant should be
   controlled by all the rules and regulations of the order in force
   or that might thereafter be enacted, the statute was applica-
   ble to a subsequently enacted by-law, though the certificate
   had been issued prior to the statute, such construction not
   rendering the statute violative of the provision of the Fed-
   eral Constitution forbidding the impairment of the obligation
   of contracts.
2. Effect—The statute may be complied with in respect to by-
   laws, etc., subsequent to the contract, by tendering a copy
   within a reasonable time and offering to attach it to the policy.
3. Statutes—Construction—The statute applies to persons in-
   sured in the State by companies doing business in the State,
   though they are organized in other States, and irrespective
   of where the contract is entered into.

R. T. DAVIS, CARLOS A. HARDY, ROBT. L. GREENE and
HAZELRIGG & HAZELRIGG for appellants.

There are many reasons why sec. 679 of the Ky. Stats. has no
application to the contract sued on. The mention of any one of

the few that we shall name is sufficient to convince the court, in our judgment, that this section of the statute did not in any way affect Hunziker's contract, viz.:

1. The statute in express terms limits its application to policies or certificates issued subsequent to its enactment.

2. The statute does not apply to cases like the one at bar, because there is no way pointed out in the statute by which the by-law of 1896 could have been "attached" to and made to "accompany" the certificate of Hunziker.

3. The statute is promotive of justice and not injustice. It can not be used by Hunziker's beneficiaries to prevent the carrying out of his express contract with his brothers.

4. The statute can not apply to by-laws of old line companies enacted subsequent to the issuance of their policies, because such by-laws can not alter or affect existing policies of such companies. To make it apply alone to fraternal beneficiary societies would be discriminative.

5. The statute can not apply to after-enacted by-laws of fraternal societies, enacted subsequent to the issuance of the benefit certificate, because it could serve no good purpose by such application of the statute. Such laws are made by the members for their own benefit, while the purpose of the statute is to protect the member against secret by-laws. The by-laws made by the members themselves are not secret. The members know what they are.

6. The statute can not apply to the contract at bar because it would impair the contract made in 1888 between Hunziker and his brother members.

7. The statute can not apply to the case at bar because it is promotive of justice and public good, whereas to give it the construction in this case claimed for it by appellees would be to make it the instrument to give Hunziker an advantage over his thousands of brothers with whom he contracted, and rob them against his express will for the benefit of his beneficiaries.

8. In cases of this kind the statute must be construed so as to promote the purposes and intentions of the contracting parties, and not to heap injustice upon the many in order to do an act of injustice to the wishes of one member by giving the money of the many beneficiaries of the one, in violation of the contract.

ROBBINS & THOMAS for appellee.

1. Whether or not the court erred in sustaining a demurrer to paragraphs 3, 4, 5 and 6 of appellant's answer can not be considered by this court, because in the motion for a new trial no

complaint was made about said ruling, and we submit that only the errors assigned and relied on in a motion for a new trial can be considered by the court.

2. The questions attempted to be raised by the paragraphs to which a demurrer was sustained are res adjudicata, having all been determined in this case against the appellant on the former appeal of this case.

3. It is a universal principle of law that statutes and laws affecting the remedy as existing in the jurisdiction of the forum will be administered regardless of what the law is affecting the remedy at the place of the execution, delivery or performance of the contract.

### AUTHORITIES.

25 Ky. Law Rep., 1510; Ky. Stats., sec. 679; 19 Ky. Law Rep., 186, 1783; 46 Am. State Rep., 439; 91 U. S. Rep., 406; 24 Ky. Law Rep., 984, 1787; 26 Ky. Law Rep., 343.

OPINION BY JUDGE O'REAR—Affirming.

The nature of this case is fully shown by the opinion delivered on the former appeal. (117 Ky., 418, 78 S. W., 201, 25 Ky. Law Rep., 1510.) The question there decided was as to the effect of a by-law adopted by appellant, a fraternal benevolent society, upon a benefit certificate, a form of life insurance, issued to one of its members, Gustave Hunziker, December 27, 1888. In the original certificate there was no provision concerning self-inflicted death. The by-law adopted September, 1896, provided that if death of a member of the fourth class (to which Gustave Hunziker belonged), whether admitted before or after that date, was the result of suicide, whether such member was sane or insane, the supreme lodge would pay only a certain part of the sum written in the certificate. The original application made in 1888 contained a provision by which the applicant agreed to be controlled by all the rules and regulations of the order governing that rank then in force or that might thereafter be enacted. The court held that as section

679, Ky. Stats. 1903, enacted in 1893, was in force when the by-law was adopted, the latter being in addition to the terms of the contract made after the enactment of the statute, was subject to the terms of the statute, which provided that by-laws of such societies were not to be deemed part of certificates of insurance unless such by-laws were printed upon or attached to the certificate. The point is made here that the enforcement of the statute as to contracts then in existence was not contemplated by the statute, and, besides, would be an impairment of the obligation of the contract, a repugnance to the Constitution of the United States. The same point seems to have been urged on the former appeal, which was disposed of by the court upon the conclusion that the statute applied as affecting only the remedy, and would not, therefore, be within the vice contemplated by the section of the Federal Constitution invoked. It was further remarked: "Counsel for appellee (appellant now) contends that the statute, because of the words 'all policies hereafter issued,' etc., has no application to a policy (certificate) that, like the one on the life of Gustave Hunziker, was issued before its enactment. That question is not now before us for adjudication."

From the foregoing quotation appellant now argues that the question presented on this appeal was expressly reserved and not decided. But counsel are mistaken in this construction of that portion of the opinion which is set out above. The court was then speaking alone of those cases where the by-laws had been passed, as well as where the certificate had been issued, before the enactment of the statute. This is made clear by the next sentence following the quoted language, which is: "We have only decided that the statute does apply to the by-laws relied on by appel-

lee, as it was adopted after the enactment of the stat-
ute, and its purpose and effect was to materially alter
the original contract of insurance, for which reason
it was required by the provision of the statute to be
attached to the original contract or certificate.'' The
former opinion is, therefore, the law of this case,
though we should have felt ourselves unable to longer
adhere to the principle in its application to other
cases. But as the original opinion was selected by
the court for official publication as declaratory of the
law for all similar cases, and as it is so earnestly
urged that the effect of the statute, if applied to pre-
existing contracts, is to impair their validity, we have
re-examined the question.

It is true that the statute itself excludes prior con-
tracts from its operation. This meant completed
contracts. There could have been no other purpose
on the part of the Legislature to exclude prior con-
tracts of insurance than to respect their obligation
as it then was. The mischief aimed at by the statute
was to prevent fraud and oppression being practiced
upon insured persons. For, although the insurer
might be a co-operative concern, it was recognized
that its governing body, whether representative
or not, might overreach his understanding, and un-
justly impose on him by secret regulations or by-
laws, made part of the contract by reference only.
This pernicious practice had obtained to some ex-
tent. The idea was to curb it, to make it impossible
in future. The provision in the old policy that it
should be subject to by-laws then in force, or that
might thereafter be adopted, left the contract open
for amendment in the future. How it was to be
amended, further than it was to a ''rule or regula-
tion'' of the society, was not stated. Now the State,
after that kind of open contract was made, has,

by the statute alluded to, required in effect and
intent, that all future engagements of insurance
of this class should conform to a prescribed pro-
cedure, or else they should be void. It did not
affect any previous contract, in so far as its obli-
gation had been fixed. But we see no reason why
the statute should not apply to alterations or changes
of such contracts. Such alterations are in a sense
new contracts, although it had been previously pro-
vided that they might be entered into. The new mat-
ter was never before an obligation. When it came to
be attached to the original contract as an obligation
of the parties, a police regulation of the State re-
quired certain prerequisite formalities before it be-
came their act. This did not impair the obligation of
the old contract, but dealt alone with the attempt to
alter that contract.

The new matter could not have been added at all,
as was done, except for the provision of the old cer-
tificate that let it in. That provision gave the right
to the insurer to alter the terms or conditions of the
original agreement of the parties, at any time in the
future, by the adoption of a new rule or regulation of
the co-operative society affecting it. Now, if the stat-
ute took away that right, then it would seem to impair
that obligation. But it did not. The right to alter or
amend by-laws and rules, or to adopt new ones, is
untouched by the statute. Hence it can not be said
that it was impaired. The new law, leaving the old
contract precisely as it was found, laid hold of the
parties, and said, in effect, "When you make altera-
tions of this contract, as you may do by the adoption
of by-laws or rules, the sovereign power of this State,
in the exercise of its duty to prevent oppression and
fraud in insurance effected in this State, requires that

a copy of such by-law shall be indorsed on or attached
to the certificate or policy of insurance.''

It is pointed out in argument that as there is no
provision in the statute for serving upon a policy
holder a copy of the after-enacted by-law, and as he
might refuse to surrender his policy or certificate
that such a copy might be attached or indorsed upon
it, or such policy holder might be abroad and inacces-
sible to either notice or contact, it could not have
been contemplated that after the delivery of such
policy or certificate the statute would apply. Hence
it is reasoned the statute has not covered the case of
policies issued before its enactment and made sub-,
ject to by-laws adopted afterwards. The statute
makes no provision, it is true, for serving a copy of
such amended or new by-law upon a policy holder to
whom a policy had been delivered. But this omission
applies as well to new as to old policies, to those
issued after as well as to those issued before the
statute was passed. Either one of two courses must
be deemed to have been contemplated by the Legisla-
ture in that event: Either that such new by-laws could
not be adopted, or that a service of a copy by offering
to deliver and attach it to the policy would suffice.
As the former would tend to cripple the power of
such societies to impose their conditions by prudent
amendments to their by-laws, as well as beget a va-
riety of liabilities in the same class of contracts and
among its members having equal rights in its assets
and equally liable to its assessments, it must be re-
jected, because it would be at war with the whole
scheme of mutual co-operative life insurance, which
is recognized by the statutes as a legitimate business.
On the other hand, as the view just discussed is re-
jected, it must be that an offer to do what one is
bound to do, if tendered in season, and the offer is

maintained, will always be accepted as a compliance with that part of the obligation. It will not do, though, to make the tender years after it should have been done, and, as in this case, after the liability of the insurer had been completed under the original contract.

A pleading filed upon the return of the case, in addition to the matter just discussed, pleaded that the contract was an Illinois contract, made and to be performed in that State, and that the statute of this State could have no extraterritorial force there. The statute applies to persons insured in this State by companies doing business in this State. Appellant does not deny that it is, and then was, doing business in this State. It had no right to come into the State to do an insurance business, nor to stay here, except upon such terms as this State might impose. Appellant can not apply its business here as an insurance society without making its contract of insurance with citizens of this State, to be effective in this State, wherever entered into, subject to the statute of Kentucky regulating the form and enforcement of such contracts, when they come to be enforced in the courts of this State.

Another matter pleaded is that the appellant is a "Federal corporation," having been organized in the District of Columbia under an act of Congress. Just what effect that plea was intended to have in the case is not made clear. There was no motion to transfer the case to the United States Circuit Court. But, whether created under an act of Congress or of any State, appellant's presence in Kentucky as an insurance corporation is subject alone to the will of Kentucky, and its contracts are to be construed and enforced by the courts of Kentucky, when it is sued in

our courts, according to their understanding of the law and merits of the case, whatever be its domicile.

We conclude that the demurrer to the rejoinder of appellant was properly sustained.

Judgment affirmed.