ELLEN REAGAN, administratrix, *vs.* UNION MUTUAL LIFE
INSURANCE COMPANY.

Bristol.   October 25, 1905. — December 1, 1905.

Present: KNOWLTON, C. J., LATHROP, LORING, BRALEY, & SHELDON, JJ.

*Insurance, Life.   Contract,* Validity.

A provision in a policy of life insurance, that it shall be incontestable from the date
of its issue "for any cause except non-payment of premiums," if it means that
the company cannot set up fraud as a defence to an action on the policy, is void
as against public policy, although a provision that a policy shall be incontestable
for fraud after the expiration of a specified time, not unreasonably short, would
be valid.   If the clause is construed as excepting fraud by implication, the
defence that the policy was obtained by material false and fraudulent repre-
sentations equally is open.

KNOWLTON, C. J.   This is an action of contract on a policy
of life insurance issued to the plaintiff's intestate.   The defend-
ant answered that the policy was obtained by fraud of the
insured.   The policy contains a clause as follows: "*Incontes-
tability.*   This policy is incontestable from date of issue for any
cause, except non-payment of premium."   After having intro-
duced proofs of her intestate's death, and other evidence that
made a *prima facie* case, the plaintiff rested, her counsel stating
as her contention, "that no question of health or fraud such as
is set up in the answer is open to the defendant under this
incontestable policy."   The defendant then offered to prove that
the insured made material false and fraudulent representations
before the issuing of the policy, which would be sufficient to
avoid it for fraud, which were made orally to the medical
examiner for the purpose of having him incorporate them in
his report to the company, and which he did so incorporate;
that the insured was an insurance agent, and made these mis-
representations for the purpose of securing this form of insur-
ance at the time and place stated in the policy; and that the
policy was issued in reliance thereon, and would not otherwise
have been issued.   The judge ruled that the evidence was not
admissible under the policy, and directed a verdict for the plain-
tiff.   He then reported the case, stating that the only question

raised is whether the evidence of such fraud is admissible in defence under such a policy.

This is not like the numerous cases in which the policy provides that it shall be incontestable for fraud after the expiration of a specified time, which is not unreasonably short. It has often been held that a provision of that kind is valid because it is in the nature of a limitation of the time within which the defendant may avoid the policy for this cause. Such a provision is reasonable and proper, as it gives the insured a guaranty against possible expensive litigation to defeat his claim after the lapse of many years, and at the same time gives the company time and an opportunity for investigation, to ascertain whether the contract should remain in force. It is not against public policy, as tending to put fraud on a par with honesty. *Wright* v. *Mutual Benefit Assoc.* 118 N. Y. 237. *Vetter* v. *Massachusetts National Assoc.* 29 App. Div. (N. Y.) 72. *Clement* v. *New York Ins. Co.* 101 Tenn. 22. *Goodwin* v. *Provident Assur. Assoc.* 97 Iowa, 226, 234. *Kline* v. *National Benefit Assoc.* 111 Ind. 462. *Murray* v. *State Ins. Co.* 22 R. I. 524. *Royal Circle* v. *Achterrath,* 204 Ill. 549. But this clause purports to make the policy incontestable for any cause, from the date of issue. We must assume that the defendant issued the policy on the faith of the fraudulent representations, without discovering the fraud, or, so far as appears, having any opportunity to discover it before the contract was made. It is true that it might have declined to issue a policy until it should take time to investigate the matters represented. If it had postponed making the contract for a considerable time, and had investigated the subjects to which the representations related, and had then issued a policy, inserting in it a provision that, having made an examination of the material matters stated by the insured, it was so far convinced of the truth of his statements that it would waive its right afterwards to set up fraud as a defence to the claim, a different question would have been presented. It then might appear that the contract was not induced by reliance upon fraudulent representations, but by an investigation which the defendant conducted, on which it relied. There is nothing to show that the policy was not issued immediately upon the receipt by the company of the report containing the false statement. The company was not

bound to postpone the making of the contract. It had a right to enter into it, relying upon the report which was founded on the false representations.

We think the question intended to be presented by the report of the judge is the same as if the plaintiff's intestate had gone into the home office of the defendant, and had made material representations as inducements to the issuing of a policy, and the defendant's manager had said, " I will give you a policy, relying on your representations. I do not know whether they are true or false, but however false and fraudulent they may be, the company will never avail itself of the fraud as a defence to a suit upon the policy," and had then given him a policy containing this clause. Will the court enforce an agreement never to set up fraud in defence to a contract, when the contract is made in reliance upon material representations that may be true or false? This question has been considered in its application to contracts of insurance. In *Wheelton* v. *Hardisty*, 8 El. & Bl. 232, 283, Lord Campbell interpreted a provision that a contract should be indefensible, as meaning indisputable, " subject to the implied exception of personal fraud which will vitiate every contract." In *Massachusetts Benefit Assoc.* v. *Robinson*, 104 Ga. 256, the court said, " A policy providing generally that it should be incontestable from its date, but silent on the subject of defending upon grounds originating in fraud, would still be a valid contract; the waiver of the right to defend on the ground of fraud not being the subject of express stipulation, the law would imply that the insurer intended to reserve to himself the right to defend upon that ground. If, however, the policy stipulated that it should be incontestable from its date, and the insurer should not be allowed any defences, whether originating in fraud or otherwise; or if it were clear from the terms of the contract that it was the intention of the parties that fraud should not be a defence, then such a contract would be void as being opposed to the policy of the law." In *Welch* v. *Union Central Ins. Co.* 108 Iowa, 224, 230, substantially the same doctrine is clearly stated. To the same effect is Bliss on Ins. (1st ed.) § 247, (2d ed.) §§ 254, 255. All the cases in the first group of the above citations discuss the incontestability of policies, after the lapse of a specified time, upon grounds that imply the existence of the same rule of law.

The reasons for the enforcement of such a rule are particularly strong when one of the contracting parties is a mutual insurance company, all the members of which share in the profits and losses.

There are various cases which forbid companies to make contracts of life insurance that are against the policy of the law. In *Ritter* v. *Mutual Ins. Co.* 169 U. S. 139, it was held that a contract to insure one against suicide would be against public policy. Mr. Justice Harlan, in the opinion, said, " A contract, the tendency of which is to endanger the public interests or injuriously affect the public good, or which is subversive of sound morality, ought never to receive the sanction of a court of justice or be made the foundation of its judgment." An agreement to be bound by a contract which the parties are making, in spite of subsequently discovered fraud by which it was obtained, would be subversive of sound morality. In *Hatch* v. *Mutual Ins. Co.* 120 Mass. 550, this court held that there could be no recovery under a policy of life insurance when the insured knowingly and voluntarily exposed her life by submitting to a criminal operation which proved fatal. For similar decisions see *Amicable Society* v. *Bolland*, 4 Bligh (N. S.) 194, and *Burt* v. *Union Central Ins. Co.* 187 U. S. 362.

We have been referred to no decision which holds valid a provision that a policy of life insurance shall be incontestable for fraud from the day of its date. The only case that we have discovered in which there is any language looking in that direction is *Patterson* v. *Natural Premium Ins. Co.* 100 Wis. 118, and in that the ground of the decision, as we understand it, is that there was no evidence on which to raise the question.

The plaintiff's contention that, because by the terms of the policy the entire contract is contained in the policy and the application, the defendant is precluded from showing fraud practised as an inducement to the making of the contract, is not well founded. This defence does not rest upon any provision of the contract, but upon the misconduct of the plaintiff, whereby he obtained the contract.

If we say that in addition to the expressed exception, the clause before us impliedly excepts fraud, then the clause is not applicable to this defence, and the evidence should have

been admitted. If we treat it as intended to include fraud among the matters which cannot be set up in defence, and this perhaps is its most probable meaning, we are of opinion that this part of the provision is against the policy of our law, and therefore void. According to the terms of the report, the entry must be,

*Verdict set aside.*

*A. S. Phillips,* ( *W. E. Fuller, Jr.* with him,) for the defendant.
*J. M. Morton, Jr.,* ( *R. A. Dean* with him,) for the plaintiff.