CASE 49—ACTION BY MAMIE HERLIHY AGAINST THE
        SOUTHERN STATES MUTUAL LIFE INSURANCE
        COMPANY.—May 12, 1910.

## Southern States Mutual Life Ins. Co. v. Herlihy.

Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

W. H. FIELD, Judge.

Judgment for plaintiff, and defendant appeals.— Affirmed.

1. Insurance—Action on Policy—Admissibility of Evidence— Application.—Under Ky. St. section 679, providing that poli cies containing any reference to the application of insured shall contain or have attached to the policy a copy of the application as signed by insured, and that no such application, unless so attached, shall be received in evidence in an action between the parties, an application was not admissible in evidence where not made a part of the policy by being incorporated in or written on or attached to it, nor is a medical examination of insured, which was a part of the application and intended to accompany it, admissible.

2. Evidence—Parol Evidence—Application.—An application for life insurance itself not being admissible because not attached to the policy, parol evidence of its contents is inadmissible.

3. Insurance—Action on Policy—Instructions.—The policies containing the only contract between the parties, and containing no reference to the health of insured, or the fact that she had other insurance, or had been rejected by other companies, requested charges that if insured when she made application had heart or kidney disease, or dropsy, and fraudulently concealed the fact from the insurer or its agents, falsely represented that she had not been rejected by any insurance company, or had made false answer as to the amount of insurance she carried, and but for such concealment and false answers the policies would not have been issued, defendant should recover, were properly refused.

4. Insurance—Action on Policies—Defenses—Substitution for Insured.—Though the insurer could not resist payment of the policies upon defenses arising out of the application, it could show that a person other than insured made the application and was examined, and that the insurance was obtained as part of a conspiracy of persons having no insurable interest in insured's life.

5. Appeal and Error—Review—Pleadings.—Where it is apparent from the conduct of the trial, and the character of testimony admitted, that certain paragraphs of the answer to which demurrer had been sustained were treated by the court and counsel as being a part of the pleadings, they will be so regarded on appeal.

6. Appeal and Error—Review—Discretion of Court—Amendment of Pleadings.—In furtherance of justice the trial court has a large discretion in permitting pleadings to be filed, which discretion will not be interfered with on appeal unless it appears from the whole case that a substantial error has been committed, and where the filing of an amended reply to matter contained in certain paragraphs of the answer upon a motion for a peremptory charge did not prejudice defendant's rights nor take it by surprise nor repreesnt any new issues, nor affect its substantial rights, granting leave to file the reply was not error.

EDWARDS, OGDEN & PEAK for appellants.

D. MOXLEY and H .J. SCHEIRICH for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This action was brought by the appellee as the beneficiary in two policies of life insurance issued by the appellant company to her mother, Mary Herlihy. One of the policies, for $1,000, was issued on the 30th of March, 1908, and the other for $3,000 was issued on April 20, 1908.

The company set up several defenses; one being that the insured in her application falsely and fraudulently stated that the only insurance then upon her life was $240 in the Prudential Life Insurance Com-

pany, when, in fact, she then had insurance in the Intermediate Life Insurance Company for $2,000. Another, that she stated in her application that she had never applied to any company for life insurance and failed to receive a policy, when, in fact, she had made application for insurance in other companies which was rejected because of her physical condition. They further set up that she represented in the application that she was in good health, which statement was false, as she was not in good health, but was suffering at the time with heart and kidney troubles. It alleged that each of these statements was material to the risk, and that, if either of them had been answered truthfully, the applications for insurance would have been denied. It was also charged that the insured at the time of the application had no property or income, was financially unable to pay the premiums, and that she entered into a conspiracy with other persons, who did not have an insurable interest in her life, for the purpose of obtaining insurance from the appellant and other companies, and that the persons so conspired with were to participate in and be beneficiaries in the insurance so obtained whenever the insured should die, and that these facts voided the policy. It further set up in an amended answer that one Cora M. Smith or a person unknown who had entered into a conspiracy with the insured for the purpose of defrauding the company in the issual of the policy was really the person examined for the insurance in place of the insured. Upon the issues made by the pleadings, a trial was had before a jury and a verdict returned in favor of appellee for the amount of the policies. The appellant complains of the judgment upon the verdict, and insists that it should have a new trial

for errors committed by the court that will be noticed in the course of the opinion.

It appears from the evidence that the insured was a widow in humble circumstances, and that she did not own any property or have any income on her own account. She had two children, a son and a daughter who lived with her, and these children, who worked for a living and earned small wages, contributed to her support. The insured died in July, 1908, and between July, 1907, and her death obtained insurance in the following companies: On August 5, 1907, $2,000 in the Western Indemnity Company; on December 13, 1907, $2,000 in the Western Reserve Life Insurance Company; on December 28, 1907, $2,000 in the Intermediate Life Assurance Company; on February 7, 1908, $2,000 in the Western Reserve Life Insurance Company; on March 26, 1908, $1,000 in the Southern States Mutual Life Insurance Company; on April 20, 1908, $4,000 in the Southern States Mutual Life Insurance Company; on May 20, 1908, $2,000 in the Limited Term Life Association. She also held a policy of $240 in the Prudential Life Insurance Company, but when this policy was issued does not appear. It was also shown that about December, 1907, she made application to the Pacific Mutual Life Insurance Company for $2,000, which was rejected, and that in June, 1908, the insured executed her note to one Cora M. Smith for $1,000, payable one day after date, and to secure the payment of this note there was pledged to Cora M. Smith the policy for $1,000, and that a few days after the death of the insured Cora M. Smith accepted $160 in satisfaction of her note. It was also shown that diligent efforts were made by the appellant company to secure the personal attendance as a witness

or the  deposition  of Cora M. Smith, but notwith-
standing these efforts she could not be found, al-
though two days after the suit was filed she by at-
torney filed her answer, subscribed and verified by
her before one of the clerks of the court in Louisville,
in which she entered her appearance and stated that
she had no interest in the policy.  Without reciting
more of the evidence, it is sufficient to say that there
are many circumstances indicating that fraud was
practiced upon the company in obtaining the policies,
although the application for insurance was made to
an agent of the company and the insured examined
by a physician selected by the company, neither  of
whom are charged with complicity in the fraud. But
the question remains:  Did the company have  the
right to avail itself of the facts disclosed by the rec-
ord that might, if admissible as evidence, defeat a
recovery?  On the trial of the case the  appellant
offered in evidence both the applications and the
medical examination made when the first insurance
policy was issued, but the court upon objection of
counsel for appellee excluded them, as well as evi-
dence of their contents, and the ruling of the court
upon this question is really the chief error relied on.

Each of the policies recites that: "In consideration
of the representations made in the application here-
for, and of the sum of $———, first annual premium
in advance, and of a like sum on the ——— day of
——— next hereafter, insures the life of Mary Her-
lihy. * * * " This is the only reference in either
of the policies to the application.  Neither of the ap-
plications nor the medical examination were attached
to or made a part of the policies. The first application
offered shows that the insured, in answer to the ques-
tion, "How much insurance she had on her life?"

said that she had ''$240 in the Prudential Life Insurance Company.'' And also that she stated that she had never applied for life insurance, and failed to receive a policy. In the application for the $3,000 insurance she stated ''that she had $240 in the Prudential Life Insurance Company, and $1,000 in the Southern States Mutual Life Insurance Company, and that she had never applied to any other company for life insurance and failed to receive a policy.'' Each of the applications also recited that the insured agreed that ''all the statements and answers herein are warranted to be true.'' And in the medical examiner's report of his examination for the first policy which was signed by the insured, she stated that no unfavorable opinion had ever been expressed as to her health or chances of obtaining insurance, and that she had never had any of a number of the diseases· mentioned in the report, including heart and kidney troubles.

Section 679 of the Kentucky Statutes reads, in part: ''All policies or certificates hereafter issued to persons within the commonwealth by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured, * * * either as forming· part of the policy or contract between the parties thereto or having any bearing on said contract, shall contain or have attached to said policy or certificate a correct copy of the application as signed by the applicant, * * * and unless so attached and accompanying the policy, no such application * * shall be received as evidence in any controversy between the parties to or interested in said policy or certificate, and shall not be considered a part of the policy or of the contract between such parties.'' In cases

against life insurance companies, in which the collection of the policy was resisted upon the ground that the insured made false answers to material questions in the application, we have uniformly ruled in accordance with the statute that the application, unless made a part of the policy by being incorporated in or written on the back of or attached to it, was not competent evidence, and could not be considered in determining whether or not the insured made true answers to the questions asked. Provident Life Savings Assurance Society v. Beyer, 67 S. W. 827, 23 Ky. Law Rep. 2460; Provident Life Savs. Soc. v. Puryear, 109 Ky. 381, 59 S. W. 15, 22 Ky Law Rep. 980; Supreme Command of United Order v. Hughes, 114 Ky. 175, 70 S. W. 405, 24 Ky. Law Rep. 984; Hunziker v. Supreme Lodge, K. P., 117 Ky. 418, 78 S. W. 201, 25 Ky. Law Rep. 1510; Metropolitan Life Insurance Co. v. Moore, 117 Ky. 651, 79 S. W. 219, 25 Ky. Law Rep. 1613, 1748. In view of these authorities, to which we adhere, the court did not err in excluding the application, nor was error committed in excluding the medical examination of the insured, which was a part of the application and intended to accompany it. This medical report was signed by the insured, and was intended to be and is a part of the application, and should have been incorporated in or attached to the policy.

But, conceding that under the statute these papers were not competent evidence, it is yet insisted that it was admissible to permit the agent, who took the applications, and the medical examiner, who received the report signed by the insured, to testify as to the contents of these papers; in other words, to state the answers that the insured made to certain questions asked her. In support of this proposition, the

argument is made that as it was charged that fraud was perpetrated in obtaining the .insurance, and false and material answers made to certain questions, it was therefore allowable to permit these witnesses to state what the insured said to them at the time the applications were being made out. It is true that fraud vitiates a contract of insurance as well as any other contract, but the question here is: How is the fraud that would be made apparent by the applications to be shown? To answer this question we have only to look to the statute, which declares it may be shown by the application if made part of or attached to the policy. Manifestly the admission of parol testimony like that offered would defeat entirely the purpose of the statute; in fact, would nullify it. If the written evidence, which is the best evidence of what occurred, is not competent, clearly its place cannot be supplied by parol evidence of what the writings contained. If the agents and medical examiners of insurance companies could in their testimony relate the written answers made by the insured to the written questions asked, there would be no reason at all for excluding the written statements. On the contrary, it would be much better to permit them to be introduced, and thereby avoid opportunity for misstatement that might result from repeating answers from memory. The application' and medical report usually contain all the information needed by an insurance company. They are the basis of and a part of the contract if one is entered into. Upon the advice furnished·by them it generally acts in issuing or declining the policy. When a copy of the application is made part of or attached to the policy, both of the parties have a copy of the entire contract between them. The insured can by examining his

policy ascertain all the statements he made, and there is no room or place for dispute as to the questions asked or answers made by the insured when applying for insurance.   When the insured dies, his benefic-iaries have the evidence upon which the policy was issued, and it is beyond the power of the company to raise an issue outside of the writing as to represent-ations or statements made by the insured.   The stat-ute is a very beneficial one, intended to protect the insured, and yet not harm the insurer, and should be so construed as not to impair its usefulness. '

We know of no authority, nor have we  been re-ferred to any, that would justify parol evidence of the contents of these papers, and the court properly excluded it.   Considine v. Metropolitan Life Ins. Co., 165 Mass. 462, 43 N. E. 201; 1 Cooley's Briefs on Insurance, p. 686;   Fidelity T. & T. Co. v. Illinois Life Ins. Co., 213 Pa. 415, 63 Atl. 51.  If the company by its failure to make  the application and medical report a part of the policies as required by the stat-ute has deprived itself of the evidence these papers would furnish, it has no one to blame but itself.  And so it was not error to refuse instructions offered by the company saying, in substance, that if the insured at the time she made the application was suffering with and knew she had some disease of the heart or kidneys, or dropsy, and fraudulently concealed this fact from the company or its agents, or falsely rep-resented that she had not been rejected by any com-pany or made a false answer as to the amount of in-surance she carried, and but for such concealment and false answers the policies would not have been issued, they should find for the company.  With the applications and the medical report out of the case, the policies contained the only contract between the

parties.  In them there is no reference to the health
of the insured, or the fact that she had other insur-
ance, or that she had been  rejected by other com-
panies.  The only undertaking on the part of the in-
sured was to pay the annual premiums which had
been paid in advance.  If therefore the defense had
been confined to matters contained in or arising out
of the applications, the court should have directed
a verdict against the company.

But, although the company could not defeat a re-
covery upon the ground that the insured in the ap-
plications made false and material answers, this con-
dition of affairs did not deprive it of the right to
make the defense that the insured was not in truth
the person who made application for the insurance
and who was in fact examined, or the defense  that
the insurance was procured as a part of a conspiracy
entered into between the insured and  others  who
had no insurable interest in her life for the purpose
of practicing a fraud upon the company.  These de-
fenses were based upon facts existing independent of
the matter contained in the application.  The failure
to comply with the statute denied the company  the
right to resist the payment of the policies upon de-
fenses arising out of the application.  It did not pre-
vent it from showing that in other respects outside
of the matter contained in the application the policies
had been voided.  If a person other than the insured
made the application and was examined, there was,
of course, no contract at all between the company and
the insured.  And so, if the insurance was obtained
as a part of a conspiracy entered into by  persons
having no insurable interest in the life of the insured,
the contract was illegal, against public policy, and
non-enforceable.   These two defenses the company

made, and the lower court properly permitted wide latitude in the examination of witnesses, whose evidence tended to support them. And in the instructions the jury were told that if they believed from the evidence that ''Mary Herlihy entered into an agreement, combination, or conspiracy with some other person or persons for the purpose of fraudulently obtaining and procuring insurance on the life of said Mary Herlihy from any insurance companies, and further believe from the evidence that in pursuance of such agreement, combination, or conspiracy, if there was such, that the policies of insurance sued on herein were obtained by false misrepresentations and statements, or by having some other person or persons examined in lieu of the said Mary Herlihy, then the law is for the defendant, and the jury should so find.'' And, further, that if they believed ''that some person or persons who had no insurable interest in the life of Mary Herlihy furnished the money with which the premiums were paid on the policies with the fraudulent purpose of obtaining the insurance and such person agreed to pay the annual premiums thereon, and that there was an agreement then entered into between the said Mary Herlihy and such person or persons by which in consideration of their payment of the premiums on said policies sued on, and that such person or persons having no insurable interest in the life of said Mary Herlihy would receive all or any part of the policies upon her death, then the law is for the defendant and the jury should so find.'' Upon the issues of fact presented by the instructions given, the jury found adversely to the contention of the company, and it cannot fairly be said that the verdict is flagrantly against the evi-

dence.  The evidence for the company upon the issues
that some other person was examined in place of
Mary Herlihy, and that the insurance was obtained
as a part of a conspiracy, consists largely in suspic-
ious  circumstances that leave  the impression that
they might have some foundation in fact.  On the
other hand, there is positive testimony that the in-
sured, Mary Herlihy, made the application and in
person submitted to the medical examination and in
person paid the premiums out of money in her pos-
session.    At any rate, the jury was better qualified
to solve this disputed question of fact than we are,
and the conclusion they reached is not against  the
evidence.

It is further insisted that the motion for a peremp-
tory instruction asked at the conclusion of the evi-
dence should have been sustained.  This contention
is based upon the fact that at the time the motion for
a peremptory instruction was made no reply had been
filed to the third and sixth paragraphs of the answer,
charging that the insured had entered into a conspir-
acy with other persons who had no insurable interest
in her life, with the fraudulent purpose of obtaining
the insurance under an agreement with the insured
that these persons should pay the premiums and re-
ceive the benefit of the policies.  When the motion for
a peremptory instruction was made, the  defendant
tendered an amended reply to paragraphs 3 and 6 of
the  answer,  and  thereupon  the  motion  for  a
peremptory  instruction  was  overruled,  as  was
the  motion  to  discharge  the  jury  and  grant
a  continuance.    The  record  shows  that  before
the  reply was  filed  the  plaintiff  entered a gen-
eral  demurrer  to  the  second,  third,  fifth,  and
sixth paragraphs of the answer, and that the demur-

rer to the third and sixth paragraphs was sustained. After this ruling of the court, the plaintiff filed a reply to the second and fifth paragraphs of the answer. No reply was needed to the first and fourth paragraphs, and the demurrer had been sustained to the third and sixth. So that, at the conclusion of the evidence, as neither the third nor the sixth paragraphs were a part of the pleadings, no reply was needed. The condition of the record effectually disposed of the complaint that the court erred in permitting the amended reply to be filed and we might pass it without further notice. But it is apparent from the conduct of the trial and the character of the testimony admitted by the court that the third and sixth paragraphs of the answer were treated by the court and counsel as being a part of the pleadings, and we will so regard them here. Considered as a part of the pleadings, and as if the demurrer had been overruled as it likely was in fact, we are nevertheless of the opinion that the court in view of the evidence that had been introduced did not err in permitting the reply to be filed or in refusing a continuance. The denial of the matter contained in these paragraphs of the answer did not prejudice in any manner the rights of the company. The case was practiced upon the theory that these paragraphs were denied, and wide latitude was allowed by the court in the introduction of evidence in support of and against the averments contained in them. There is no suggestion, and there could not well be, that the filing of the reply took the company by surprise, or presented any new issues or affected its substantial rights. In furtherance of justice, the trial court has a large discretion in permitting pleadings to be filed, and this discretion we will not interfere with unless

it appears from a consideration of the whole case that a substantial error has been committed.

Wherefore the judgment of the lower court is affirmed.