## American Patriots v. Cavanaugh.

(Decided June 20, 913).

### Appeal from Christian Circuit Court.

1. Insurance, Life—Mutual Benefit Societies—Action to Recover in Excess of Sum Paid Beneficiary—Tender—Necessity For.—Where a mutual benefit society pays to a beneficiary a certain sum which it admits was due under the policy, no tender of the sum so paid is necessary in order to enable the beneficiary to sue for the balance alleged to be due under the contract.

2. Insurance, Life—Failure to Attach By-Laws to Policy—Statutory Provision—Effect.—A certificate of insurance issued by a fraternal benefit society in the year 1904 is governed by the provisions of section 679, Kentucky Statutes, 1903, requiring the by-laws of the mutual benefit society to be attached to and made a part of the certificate, and not by the amendment of 1906, exempting fraternal societies from the operation of the statute.

3. Insurance, Life—Fraternal—Constitution and By-Laws Not Attached to Certificate—Liability Under Certficate.—Where the constitution and by-laws of a fraternal benefit society are not attached to the certificate of insurance, as required by section 679, Kentucky Statutes, 1903, and cannot, therefore, be received in evidence or considered a part of the contract, a certificate of in-

surance providing that the members shall be entitled "to participate in the benefit fund of the National Fraternal Union, in the sum of not to exceed $1,000, payable in case of his death to his wife, Elmira Cavanaugh, as now or may hereafter be provided for in the constitution and laws of the order," is a contract of insurance for $1,000.

4.  Insurance, Life—Fraternal—Compromise — Fraud — Evidence. — Where the beneficiary in a certificate of insurance accepted less than was due under the certificate, and sued to recover the balance on the ground that the alleged settlement was obtained by fraud, evidence examined, and held to justify a submission of the question to the jury.

HUNTER WOOD & SON for appellant.

C. H. BUSH for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

In the month of April, 1904, the National Fraternal Union, a fraternal benefit society created and organized under the laws of this State, issued to Lee Cavanaugh, of Hopkinsville, Kentucky, a certificate of membership entitling him "to participate in the benefit fund of the National Fraternal Union, in the sum of not to exceed $1,000, payable in case of his death to his wife Elmira Cavanaugh, as now or may hereafter be provided for in the Constitution and Laws of the Order." The certificate also contains the following provision: "The Constitution and laws as now enacted, or as may be hereinafter legally enacted, together with the statements made in the application for this certificate and the answers made in the application for this certificate and the answers made in the health report, shall be and are hereby made the only contract or agreement which shall bind the order for any claims whatsoever." Cavanaugh, in writing, accepted the certificate subject to the terms thereof.

On May 8, 1907, the National Fraternal Union was consolidated with the American Patriots, another fraternal benefit society, which was organized and doing business under the laws of the State of llinois. Under the articles of consolidation, the business of the consoldated corporation was to continue to be transacted under the charter, constitution and by-laws of the American Patriots, as expressed in the contract of consolidation, "now in force, subject to amendment or repeal as experience or conditions may require." After the afore-

said consolidation, the American Patriots assumed the contracts, obligations and liabilities of the National Fraternal Union, and issued to Lee Cavanaugh the following agreement, which was attached to the certificate of insurance:

"In consideration of the contract of consolidation adopted by the vote of the members of the American Patriots of Springfield, Illinois and the National Fraternal Union of Murray, Ky., both being . Fraternal Beneficiary Societies, it is hereby certified that the American Patriots assumes and agrees to pay the benefits promised in Certificate No. 1598 issued to Lee Cavanaugh by the National Fraternal Union; Provided that the member is in good standing at the date of death or disability insured against."

On May 12, 1908, the American Patriots adopted the following amendment to its constitution and by-laws:

"Sec. 101. All members of the Society holding certificates of membership providing for the payment of death benefits but written on lower rates than the table of rates as set forth in Section 52 of the Constitution, may continue their membership in the Order by paying a lower rate, but each such certificate shall be charged with the difference between the rate paid by the member and the rate now in force as shown by the table of rates set forth in Section 52 for the age at which he became a member of the American Patriots, and for a period equal to the expectation of life of a person of that age, as based upon the American Experience Table of Mortality; which amount shall be deducted from any death or total disability benefits that may become due thereunder."

Under the foregoing amendment there was due on the certificate in question only $545.84, whereas under the by-laws in force at the time the certificate was issued, the amount due was $780.66.

In the month of July, 1910, Lee Cavanaugh died a member in good standing. The American Patriots paid to his widow, Elmira Cavanaugh, the sum of $545.84. Thereafter she brought this suit against the American Patriots to recover the difference between that sum and the sum of $780.66, which she alleged to be due under the certificate, pleading that the receipt from her was obtained by fraud, and that there was no consideration for her agreement to accept less than the amount due.

Defendant denied the fraud, and relied on the settlement, and also pleaded that under its constitution and by-laws as amended, plaintiff was entitled only to the sum paid her. The case was submitted to the jury, which returned a verdict in favor of plaintiff. Judgment was entered accordingly, and defendant appeals.

The evidence as to the circumstances under which payment was made is as follows: Plaintiff says that defendant's representative came to her on the morning of the settlement and told her that he was in a hurry to catch a train which would shortly leave. She says that he represented to her that all her husband was entitled to under the certificate was the sum of $545.84, and that he had a check for her for that amount. She told him she thought she was going to get a thousand. He replied that a man of her husband's age did not get as much as a young man, and said that she would have to take that amount or nothing. She further says that while she thought there was more due her, yet when the agent told her the amount he offered was all that she was entitled to, she, relying on his statements, and not knowing her rights, accepted that amount, believing that she would get nothing if she did not take the amount offered. On the other hand, the agent of the company testifies that he went to Mrs. Cavanaugh's home on the morning of the settlement. He explained to her that he had come there to make a settlement. He explained to her that under Section 101 of the Constitution, the amendment adopted in the year 1908, she was entitled only to the sum of $545.84; that the company was settling all claims under the amendment. He and plaintiff argued the matter for quite a while, and finally she agreed to accept the check for $545.84 as a compromise settlement of her claim.

First it is insisted that the court erred in overruling defendant's demurrer to the petition. The ground of the demurrer is that the petition failed to allege a tender of the amount paid plaintiff. There is no merit in this contention. Plaintiff's claim grew out of the contract. It is admitted by defendant that plaintiff was entitled to the amount paid her. So far as that amount is concerned there is no controversy. She was entitled to that sum in any view of the case. It was therefore, not necessary for plaintiff to restore to the defendant the amount which defendant admitted to be due, in order to recover the balance about which alone there was a

dispute. Commonwealth Life Insurance Co. v. Hughes, 144 Ky., 608.

It is insisted that under the by-laws as amended plaintiff was entitled to recover only the amount paid her. As to whether or not the by-law in question was defective as to the certificate issued plaintiff's husband, we deem it unnecessary to decide. At the time the certificate was issued, Section 679, Kentucky Statutes, provides as follows:

"All policies or certificates hereafter issued to persons within the Commonwealth by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured, or the constitution, by-laws or other rules of the corporation, either as forming part of the policy or contract between the parties thereto or having any bearing on said contract, shall contain or have attached to said policy or certificate a correct copy of the application as signed by the applicant, and the portion of the constitution, by-laws or other rules referred to; and unless so attached and accompanying the policy, no such application, constitution, by-laws or other rules shall be received as evidence in any controversy between the parties to or interested in said policy or certificate, and shall not be considered a part of the policy or of the contract between such parties. The said policy or certificate, application, constitution, by-laws or other rules shall be plainly printed, and no portion thereof shall be in type smaller than brevier: *Provided, however,* That nothing in this section shall be construed as applying to health certificates or constitutional receipts, or other evidences used in reinstatement of a policy or certificate."

The foregoing section was amended by Act of March 24, 1906, by the addition of the following provision:

"But the provisions of this section and this subdivision shall not apply to secret or fraternal societies, lodges or councils, which are under the supervision of a grand or supreme body, and secure members through the lodge system exclusively, and pay no commission nor employ any agents, except in the organization and supervision of the work of local subordinate lodges or councils."

It has been frequently held that contracts entered into prior to the amendment of 1906 are controlled by the statute then in force, and not by the amendment,

Mooney v. Ancient Order of United Workmen, etc., 72 S. W., 288, 24 Ky. L. R., 1787; Supreme Lodge v. Hunziker, 87 S. W., 1134, 27 Ky. L. R., 1201; Bankers' Fraternal Union v. Donahue, 109 S. W., 878; Sovereign Camp of Woodmen of the World v. Salmon, 120 S. W., 358; American Guild v. Wyatt, 100 S. W., 266, 30 Ky. L. R., 632. In the present case the amendment to the constitution and by-laws relied on by the defendant was not attached to or made a part of the certificate. The case, therefore,. comes within the express terms of the statute. It is immaterial that there was no objection to the introduction of the amendment in evidence. The purpose of the statute was not merely to provide a rule of evidence, but it goes further and adds "and shall not be considered a part of the policy or of the contract between such parties." It has accordingly been held that the contract or certificate is the contract between the parties, unless the constitution, by-laws or other papers, referred to in the statute, are attached thereto. American Guild v. Wyatt, *supra*.

But it is insisted that plaintiff's witness, in order to calculate the amount claimed by her to be due on the certificate, had to resort to the constitution and by-laws in force at the time the certificate was issued, and that if the by-laws then in force are to be considered a part of the policy, then the amendment thereto relied on by defendant should, for like reason, be considered a part of the policy. In our opinion, however, neither one was a part of the policy. Excluding them, we conclude that the certificate in question must be held to provide for insurance in the sum of $1,000. That being true, plaintiff, as a matter of right, was entitled to recover that sum. Not having sued for that sum or prosecuted a cross appeal, the error in this respect cannot be reviewed.

· This brings us to a consideration of the claim of fraud. There is very little discrepancy between the evidence of the plaintiff and that of the defendant's agent. The evidence leaves no doubt that plaintiff accepted the amount tendered her believing the statements of defendant's agent that that sum was all she was entitled to and all that she could get under the certificate. That he made these representations there can be no doubt. Had it not been for these representations, plaintiff would not have accepted the sum paid. Furthermore, plaintiff's rights were fixed by her contract. Without understanding her rights, she accepted a sum less than that pro-

vided for in the contract. The acceptance of a sum less than that due, under these circumstances, was without consideration, and the evidence fully justified the submission of the question of fraud to the jury, even if it did not authorize a peremptory instruction in plaintiff's favor.

Judgment affirmed.