## NEW YORK LIFE INS. CO. v. GAY.

Circuit Court of Appeals, Sixth Circuit. December 13, 1929.

No. 5242.

Wm. Marshall Bullitt, of Louisville, Ky. (John E. Tarrant and Bruce & Bullitt, all of Louisville, Ky., on the brief), for appellant.

James M. Benton, of Winchester, Ky. (Benton & Davis, of Winchester, Ky., on the brief), for appellee.

Before DENISON and HICKENLOOPER, Circuit Judges, and HAHN, District Judge.

HAHN, District Judge. The plaintiff below brought this action in the circuit court for Clark county, Ky., as beneficiary of a policy of life insurance by which the defendant had insured the life of his testator, David S. Gay. The case was removed for diversity of citizenship to the United States District Court for the Eastern District of Kentucky. The application for said insurance policy was dated March 13, 1923, and a policy in the

amount of $20,000 was dated March 20, 1923, and was delivered to the insured on the 29th day of April, 1923.

The insurance company defended upon the grounds, inter alia, that the plaintiff's testator on the 13th day of March, 1923, had made false and fraudulent answers in his application for said insurance, in that he stated in said application that he had never consulted a physician for, and that he had never suffered from, any ailment or disease of the stomach; that he never consulted a physician for any ailment or disease not included in the application, except that he had been treated in the five years before said application by Doctor B. J. Johnson; and that said treatment was for a cold, from which he completely recovered in two weeks. The insurance company claimed that these answers were false and fraudulent because said David S. Gay had in fact consulted said Dr. B. J. Johnson, Dr. W. S. Wyatt and Dr. Kennon Dunham for a serious ailment of the stomach, which had developed or which afterwards developed as carcinoma of the stomach. The answer further alleged that on or about the 19th day of March, 1923, which was six days after the date of the application, said David S. Gay went to Kelly's Sanitarium, in Baltimore, Md., and there consulted Dr. Curtis F. Burnam; that Gay at that time was suffering from carcinoma of the stomach and knew that he was suffering from that disease; and that he submitted to radium treatment for a period of three weeks.

This case was tried twice in the District Court. Upon the first trial, because of the fraud of the insured, the court directed a verdict for the defendant. Upon a motion for a new trial, the court reconsidered its finding and conclusions, granted a new trial, and, upon said trial, directed a verdict for the plaintiff. The decision of the court was based upon two statutes of the Commonwealth of Kentucky, as construed by the Court of Appeals of that commonwealth. These statutes (Ky. St.) are, in part, as follows: "Section 656. Nor shall any such company or any agent thereof make any contract of insurance or agreement as to such contract, other than is plainly expressed in the policy issued thereon."

And section 679 is, in part, as follows: "All policies or certificates hereafter issued to persons within the commonwealth of Kentucky by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured, or the by-laws, or the rules of the corporation, either as forming part of the policy or contract between the parties thereto, or as having any bearing on said contract, shall have such application, by-laws and rules, or the parts thereof relied upon as forming part of the policy or contract between the parties thereto, or as having any bearing on said contract, attached to the policy or certificate, or printed on the face or reverse side thereof, and unless either so attached and accompanying the policy or printed on the face or reverse side thereof, shall not be received as evidence in any action for the recovery of benefits provided by the policy or certificate, and shall not be considered a part of the policy, or of the contract between the parties. The policy or certificate, and the rules and regulations, shall be printed, and no portion thereof shall be in type smaller than brevier."

The District Court came to the conclusion that, whether either or both statutes applied to the case, the court was precluded by at least seven decisions of the Kentucky Court of Appeals construing the statutes from permitting a defense of fraud arising out of material misrepresentations in the application for life insurance unless a sufficient copy of such application accompanied the policy; that under the holding in the case of Fidelity Mutual Insurance Co. v. Preuser (1922) 195 Ky. 271, 242 S. W. 608, the application attached to the policy in suit was insufficient because it was a photostatic copy unduly reduced in size, and that neither the application nor parol proof of the questions and answers of the application (Southern States Mutual Life Insurance Co. v. Herlihy [1910] 138 Ky. 359, 128 S. W. 91) was admissible in evidence. The court considered all of the evidence of fraud and nondisclosure as being reflected in the alleged false answers in the application, and did not give independent consideration to evidence of fraud alleged to have occurred after the date of the application and prior to the delivery of the policy, or between March 13, 1923, and the 29th day of April, 1923.

The insurance company here urges that the court below erred in the application of the statutes above quoted and the decisions of the Court of Appeals of Kentucky, and that the court further erred in not giving full and independent consideration to the alleged fraud occurring after the date of the application. It is urged that the court did not give that consideration to the facts which is required by the decision of the Supreme Court of the United States in Stipcich v. Metropol-

itan Life Insurance Co., 277 U. S. 311, 48 S. Ct. 512, 514, 72 L. Ed. 895. The latter case was decided after this case had been disposed of in the court below.

The Stipcich Case did not deal with the effect of alleged false answers in an application for insurance, but dealt solely with the effect of nondisclosure of material facts occurring between the date of the insured's application and the delivery of his policy. The facts were that after applying for insurance, but before the delivery of the policy to him, the insured suffered a recurrence of a duodenal ulcer which later caused his death, and that he failed to reveal this information to the company. The court considered the effect of these facts independently of the alleged fraud in the answers of the insured's application, and held that the insurance company was entitled to disclosure of them.

The reasoning of the Stipcich Case as applied to this case is, briefly, to the effect that insurance contracts are traditionally contracts uberrimæ fidei;[1] that a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option; that, while the modern practice of requiring the applicant for life insurance to answer questions prepared by the insurer has relaxed the rule to some extent, the reason for the rule still obtains with added force as to changes materially affecting the risk which come to the knowledge of the insured after the application and before the delivery of the policy; that if, while the company deliberates, the insured discovers facts which make portions of his application no longer true, then the most

[1] As early as 1766 Lord Mansfield, in one of the cited cases, Carter v. Boehm, 3 Burrow's Reports, Court of King's Bench, 1909, said:

"Insurance is a contract upon speculation.

"The special facts, upon which the contingent chance is to be computed, lie most commonly in the knowledge of the *insured* only: the under-writer trusts to his representation, and proceeds upon confidence that he does not keep back any circumstance in his knowledge, to mislead the under-writer into a belief that the circumstance does not exist, and to induce him to estimate the risque, as if it did not exist.

"The keeping back such circumstance is a *fraud*, and therefore the policy is *void*. Although the suppression should happen through *mistake*, without any fraudulent intention; yet still the under-writer is *deceived*, and the policy is *void*; because the risque run is really different from the risque understood and intended to be run, at the time of the agreement.

"The policy would equally be void, against the *under-writer*, if *he* concealed; as, if he insured a ship on her voyage, which he privately knew to be arrived: and an action would lie to recover the premium."

elemental spirit of fair dealing requires that he make full disclosure; and that, in a suit upon a policy issued under circumstances when such disclosure was not had, the insurance company has a valid defense based upon such nondisclosure.

The evidence in this record supports the inference that while Gay of course knew that he had consulted three physicians for an ailment of the stomach prior to the date of his application, and that his answers in his application in that respect were untrue, he did not at the time he signed his application know that he was afflicted with cancer of the stomach. His physicians, though suspicious of cancer of the stomach, did not advise him of such suspicions. His report to Dr. Curtis F. Burnam at Baltimore was that it had been reported to him that his stomach was normal in February of 1923, and there is no evidence in the record that that was not his belief at the time he signed his application on March 13, 1923. Three days thereafter, however, upon the advice of one of the physicians whom he had consulted prior to the date of his application, he consulted Dr. Curtis F. Burnam at the Howard A. Kelly Hospital in Baltimore, who, after an examination of Gay, recommended that he submit to a surgical operation for the removal of the pyloric end of his stomach, or at least that he submit to radium treatment for that area of his stomach. Gay did submit to such radium treatment for a period of three weeks. Thus it appears that between the date of his application and the date of the delivery of the policy in suit his symptoms became so definite that a physician, whom he must have regarded highly, diagnosed his affliction as cancer of the stomach and advised the above extreme and radical treatment. Doctor Burnam was uncertain as to whether he had advised Gay that he was afflicted with cancer of the stomach.

If we may regard Gay's belief at the time he signed his application to be colored with optimism as to his condition, the more serious fraud upon the insurance company was perpetrated after he signed his application in failing to disclose to the insurance company that he had definitely learned that the condition of his stomach was such that he had been advised to submit to a surgical operation and to radium treatment which, as a matter of common knowledge, in stomach treatment, points only toward a diagnosis of cancer. He knew that the insurance company was proceeding upon the assumption that he had not consulted a physician for any stomach

ailment in the five previous years, and to take the tendered policy without disclosing his discoveries after he signed the application was to perpetrate a plain fraud upon the insurance company. Clearly the insurance company did not receive the disclosures to which it was entitled under the rule of the Stipcich Case.

Neither the statutes of Kentucky above quoted nor the decisions of the Court of Appeals of that commonwealth in any way modify the rule of the Stipcich Case. They deal solely with the right of an insurance company to defend upon the ground of fraud which is reflected in the misrepresentations of an application. So far as nondisclosure of facts transpiring after the signing of an application is concerned, the statutes in question are not broader in their scope and effect than the statute of the state of Oregon which was involved in the Stipcich Case, and which required that the entire contract between the insured and the insurance company be set forth in the application and the policy. In Fidelity Mutual Insurance Co. v. Preuser (1922) 195 Ky. 271, 242 S. W. 608, 609, the court said:

"It is well settled that an application must be attached to or recited in the policy otherwise it cannot be received in evidence. Manhattan Life Ins. Co. v. Myers, 109 Ky. 372, 59 S. W. 30, 22 Ky. Law Rep. 875; Southern States Mutual Life Ins. Co. v. Herlihy, 138 Ky. 359, 128 S. W. 91; American Patriots v. Cavanaugh, 154 Ky. 653, 157 S. W. 1099. And, while this had been more generally held under section 679 than under section 656 of Kentucky Statutes, the reason for the rule is plainly included in the latter section, which requires that no contract of insurance shall be made other than is plainly expressed in the policy issued."

■ It was urged in the Stipcich Case that, in attempting to rely upon nondisclosure of facts occurring after the date of the application, the insurance company was attempting to add another term to the contract, contrary to the terms of the statute. The court said: "The obligation was not one stipulated for by the parties, but is one imposed by law as a result of the relationship assumed by them and because of the peculiar character of the insurance contract. The necessity for complying with it is not dispensed with by the failure of the insurer to stipulate in the policy for such disclosure."

We find no decisions of the Kentucky Court of Appeals holding that, in enacting the quoted statutes, the Legislature of Kentucky attempted in any wise to modify the obligation of disclosure imposed by law.

It follows, we think, that the insurance company, without offering in evidence the application or oral proof of the questions and answers therein contained (Southern States Mutual Life Insurance Co. v. Herlihy, 138 Ky. 359, 128 S. W. 91), had a right to prove, as it did, by the insured's physicians, his actual condition of health prior to, and at the time of, the signing of the application, his knowledge and nondisclosure thereof, for the bearing and relation which such condition of health might have upon and to the matters transpiring and the discoveries had after the signing of the application and which were not disclosed to the insurance company.

On behalf of the insured it is urged, however, that under the doctrine of the Stipcich Case the insurance company by its contract might assume the risk of changes in the health of the insured occurring after the date of the application and before the date of the issuance of the policy, and that, under such circumstances, failure of the insured to disclose any later known changes will not affect the policy. In that connection the insured relies upon that part of the application in this case which is as follows: "It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination, and the contract shall thereupon, unless provided for otherwise above, relate back to and take effect as of the date of this application; provided, however, that if the applicant, at the time of making this application, pays the agent in cash the full amount of the first premium for the insurance applied for in Questions 2 and 3 and so declares in this application and receives from the agent a receipt therefor on the receipt form which is attached hereto, and if the Company, after medical examination and investigation, shall be satisfied that the applicant was, at the time of making this application, insurable and entitled under the Company's rules and standards to the insurance, on the plan and for the amount applied for in Questions 2 and 3, at the Company's published premium rate corresponding to the applicant's age, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made,

whether the policy be delivered to and received by the applicant or not."

We may assume that the quoted provisions in some instances are effective for the claimed purpose, and we need not consider the incongruous position of the insured's representative in now relying upon a provision which, at his request, was ruled out of the case as being inadmissible (this was the necessary effect of granting plaintiff's motion for a directed verdict), and through which ruling he escaped the legal effect of the fraudulent answers in this very application. We think the provision of the application relied upon can be of no avail as against established fraud on the part of the insured. The application contains no express provision waiving the insured's fraud, and it would be against reason to hold that the insurance company intended to waive fraud of the character involved in this case unless expressly so provided. In the absence of an express provision the implication would be that there was no intention to waive the personal fraud of the insured. Wheelton v. Hardisty, 8 El. & Bl. 232–283; Massachusetts Beneficial Life Association v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261. And an express provision waiving such fraud would be contrary to public policy and would be invalid and ineffectual.

It is well settled that the suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation. Tyler v. Savage, 143 U. S. 79, 12 S. Ct. 340, 36 L. Ed. 82. And fraud vitiates the most solemn contracts and documents, and even judgments. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Minneapolis, St. Paul, etc., R. Co. v. Rock, 279 U. S. 410, 49 S. Ct. 363, 73 L. Ed. 766.

Accordingly, in the better reasoned cases it has been held that an express stipulation in a contract that a false or fraudulent representation, by which one party has induced the other to enter into it, shall not affect its validity, is itself invalid and cannot operate either by estoppel or otherwise. Hofflin v. Moss (C. C. A. 8) 67 F. 440; Strand v. Griffith (C. C. A. 8) 97 F. 854, 858; 13 C. J. 420, § 350; 2 Williston on Contracts, § 811; Pearson v. Dublin, [1907] A. C. 351; Reagan v. Union Mutual Life Insurance Co., 189 Mass. 555, 76 N. E. 217, 2 L. R. A. (N. S.) 821, 109 Am. St. Rep. 659, 4 Ann. Cas. 362; Bridger v. Goldsmith, 143 N. Y. 424, 428, 38 N. E. 458. Compare Kansas Mutual Life Insurance Co. v. Whitehead, 123 Ky. 21, 93 S. W. 609, 13 Ann. Cas. 301.

Three of the cases cited in connection with that part of the Stipcich Case (pages 315 and 316 of 277 U. S., 48 S. Ct. 512, 72 L. Ed. 895) relied upon by counsel, are not to the contrary. They recognize that under certain contract arrangements insurance becomes effective as of the date of the application, and that the insurance company assumes the risk of changes of health intervening the application and the delivery of the policy; but Ben. L. Mutual Insurance Co. v. Higginbotham, 95 U. S. 380, 383, 24 L. Ed. 499, involved an application for reinstatement of a life insurance policy that had lapsed for nonpayment of a premium. There was not in that case, as there was in this case, fraudulent nondisclosure at the time of the making of the application. Grier v. Insurance Co., 132 N. C. 542, 545, 44 S. E. 28, states the rule "in the absence always of fraud"; and Gardner v. Insurance Co., 163 N. C. 367, 373, 79 S. E. 806, 808, 48 L. R. A. (N. S.) 714, Ann. Cas. 1915B, 652, announces the rule, "in the absence of fraud or other sufficient equitable element, as they affect the validity of the contract of insurance." The fourth cited case, New York Life Insurance Co. v. Moats, 207 F. 481 (C. C. A. 9), strongly relied upon by counsel, sustains their contention, but it relieved the insured from disclosure of an intervening change of health on the ground that there could be no obligation of disclosure and consequent fraud unless there was an express provision of the insurance contract requiring disclosure. This is no longer the law, for the Stipcich Case holds in the quotation above (page 316 of 277 U. S., 48 S. Ct. 512, 72 L. Ed. 895) that such an obligation of disclosure is one imposed by law and a stipulation in the policy requiring it is unnecessary; compare Goldstein v. New York Life Insurance Co., 176 App. Div. 813, 162 N. Y. S. 1088.

There is ample evidence in the record within the limitations already suggested (Southern States Mutual Life Insurance Co. v. Herlihy, supra) which warranted only the finding that the contract of insurance here involved had its very inception in fraud which continued until the delivery of the policy, thus vitiating every provision of the contract.

It is unnecessary to consider other assignments of error. Upon the undisputed evidence found in this record and the only possible inferences therefrom the verdict should have been directed for the defendant. The judgment is reversed, and the case remanded for further proceedings not inconsistent with this opinion.