## NEW YORK LIFE INS. CO. v. COHEN et al.
### No. 5793.

Circuit Court of Appeals, Sixth Circuit.
April 8, 1932.

A. D. Baldwin, of Cleveland, Ohio (Garfield, Cross, MacGregor, Daoust & Baldwin, of Cleveland, Ohio, on the brief), for appellant.

A. E. Bernsteen, of Cleveland, Ohio (David Perris, of Cleveland, Ohio, on the brief), for appellees.

Before MOORMAN and HICKS, Circuit Judges, and NEVIN, District Judge.

NEVIN, District Judge.

On June 29, 1928, Louis Cohen signed an application to the New York Life Insurance Company for death and disability insurance. As a result two policies were issued by the insurance company, aggregating $15,000 in amount, and providing for disability benefits of $150 monthly. The policies were dated July 6, 1928, and were delivered to and accepted by the applicant on July 20, 1928. On July 21, 1928, Mr. Cohen became and still is insane. The insurance company filed its bill in equity in the court below, praying for the cancellation of the two policies, on either or both of two grounds, to wit: (1) That there was a fraudulent misrepresentation which invalidated the policies; (2) that it was agreed by the parties that the policies should not take effect if the applicant consulted a physician between the date of the medical examination and the delivery of the policy, and that this condition precedent was not complied with. Defendants in their answer denied that there were any fraudulent misrepresentations made by the applicant which invalidated the policies, and denied that between the dates of June 29, 1928, and July 20, 1928, Louis Cohen consulted a physician for brain, nervous trouble, gastric disturbances or other ailments, and further say, not admitting that said defendant, Louis Cohen, did consult any physician, that the said complainant if said defendant, Louis Cohen, did so consult a physician, would nevertheless have issued to him the policies. It is admitted that the premiums paid on the policies have been tendered back and refused. Defendants also filed a counterclaim containing two causes of action, one based on each of the policies, respectively, praying for judgment on account of disability benefits, which defendants claimed had accrued and were due up to that time. The trial court found in favor of the defendants and awarded judgment on the counterclaim, dismissing the amended bill of complaint of the appellant herein. See 48 F.(2d) 903.

The case is brought here on appeal by the plaintiff below, New York Life Insurance Company. The record shows that, on the same day that Louis Cohen signed the application for the policies in question, he was examined by the insurance company's medical examiner; that certain questions printed on the application were asked of him, and that answers in writing were made, and that thereafter Louis Cohen signed the application containing the questions and answers. Among the questions and answers contained in the application, which was attached to and made a part of the policies, were the following: "8. Have you consulted a physi-

cian for or suffered from any ailment or disease of A. The Brain or Nervous System 'Yes' or 'No.' Answer, No. * * * 10. Have you consulted a physician for any ailment or disease not included in your above answers? No. 11. What physician or physicians, if any, not named above, have you consulted or been examined or treated by within the past five years? Name and address. Cleveland Clinic. (If none, say none.) Date 1924. Reason for Consultation, Examination or Treatment. Pain in right side for 10 days. No definite diagnosis. No further trouble." At the end of these answers Mr. Cohen signed an agreement as follows: "On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the Company believing them to be true shall rely and act upon them."

The record discloses that on January 16, 17, and 18, 1928, Mr. Cohen suffered what the court below in its opinion termed "a rather serious attack of some nervous disorder," at which time Dr. Rubin, his family physician, was called in to treat him. At this time, according to the testimony of Dr. Rubin, Mr. Cohen appeared to be irritated, angry, and quite nervous, saying that a week or so before he had met some man at a wedding whom he greatly disliked, and that the incident had completely upset him. Dr. Rubin at first prescribed bromides, thinking that this was all that would be necessary, but on January 18th, he called in consultation Dr. Drysdale, a skilled neurologist. Dr. Drysdale testified that he found Mr. Cohen much depressed, restless, and sick, and that there being no physical reason to account for his condition, "my diagnosis was acute depression * * *—a mental situation." Dr. Drysdale prescribed hypnotics and suggested that Mr. Cohen go to a sanitarium if the medicines and course of treatment he prescribed did not suffice. Dr. Drysdale called upon him only on this one occasion. Subsequently, Mr. Cohen, who conducted a grocery store, returned to his work and continued steadily in so doing without further symptoms of trouble until on or about the 21st day of July, 1928, when he became completely insane.

Dr. Stone, who is a physician specializing in nervous and mental diseases, testified that he saw Mr. Cohen on two occasions, once on August 18, 1928, and again on October 27, 1928,—after the policies in question had been delivered. He testified that he had been called in by Dr. Rubin and that Dr. Rubin, the family physician, and Mr. Cohen's wife and son-in-law were present at the time Mr. Cohen was examined. Referring to the nature of the insanity, Dr. Stone testified: "I diagnosed him as a melancholia, that is, a depressed phase of the manic-depressive psychosis, the melancholia type. * * * Otherwise known as a melancholia in an individual of his age."

The trial court found that the answers which Mr. Cohen had made to questions Nos. 8, 10, and 11, above referred to, "were untrue in fact," but the court held that the answers, though false, were not willfully fraudulent; that under the whole of the evidence the answers should be disregarded as immaterial. The evidence plainly shows that the company had no knowledge of the falsity of the answers to the questions, above referred to, made to the company's medical examiner by Mr. Cohen.

Dr. Pratt, medical supervisor of the insurance company, who passed on the application of Mr. Cohen, testified that in issuing policies he and the company relied upon the answers made to the medical examiner, believing them to be true; that they were regarded as material; that the answers induced the company to issue the policies, and that but for such answers the policies would not have been issued; that, had Mr. Cohen answered the questions correctly, the application would have disclosed that he had had an acute mental depression within six months of the time of the making of the application, and that consequently the policies in question would not have been issued, especially in view of the fact that the policies provide for health benefits.

■ 1. We think that upon a consideration of all of the evidence, as disclosed by the record in this case, the trial court erred in its conclusions and judgment. "A positive statement of fact, falsely made, with respect to a material matter, will, nothing else appearing, be deemed to have been made willfully and with intent to deceive." New York Life Insurance Co. v. Wertheimer, 272 F. 730, 734, 735 (D. C., N. D. Ohio); Mutual Life Insurance Co. v. Hurni, 260 F. 641 (C. C. A. 8); Raives v. Raives, 54 F.(2d) 267 (C. C. A. 2); and Claflin v. Insurance Co., 110 U. S. 81, 3 S. Ct. 507, 28 L. Ed. 76.

■ As stated by the Supreme Court in the case of Stipcich v. Metropolitan Life Insur-

ance Company, 277 U. S. 311, on page 316, 48 S. Ct. 512, 513, 72 L. Ed. 895, "Insurance policies are traditionally contracts uberrimae fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. Carter v. Boehm, 3 Burrows, 1905; Livingston v. Maryland Insurance Co., 6 Cranch, 274, 3 L. Ed. 222; McLanahan v. Universal Insurance Co., 1 Pet. 170, 7 L. Ed. 98; Phoenix Life Insurance Co. v. Raddin, 120 U. S. 183, 189, 7 S. Ct. 500, 30 L. Ed. 644; Hardman v. Firemen's Insurance Co. (C. C.) 20 F. 594."

In the light of all of the testimony in the case, the answers made by Mr. Cohen cannot be disregarded as immaterial. Under the facts of the instant case, and considering the nature of the policies for which application was being made, the representations made in the answers to questions Nos. 8, 10, and 11 of the application were, as a matter of law, material. Haddad v. New York Life Insurance Company, 42 F.(2d) 651, 652; New York Life Insurance Company v. Goerlich, 11 F.(2d) 838, 841; Norwich Union Indemnity Co. v. Kobacker & Sons Co., 31 F.(2d) 411, 414; New York Life Insurance Co. v. Gay, 36 F.(2d) 634; Id., 48 F.(2d) 595 (all C. C. A. 6).

Adopting the language of the last paragraph of the decision in the Haddad Case, supra, it is entirely clear to us, as a matter of law upon the undisputed facts, that the answers referred to herein were willfully false, were fraudulently made, were material, and that but for them the policies would not have been issued.

2. The conclusion to which this court has arrived disposes of the case and makes it unnecessary for the court to discuss or pass upon the other question raised by appellant and referred to earlier in this opinion.

The decree of the lower court is reversed, and the cause remanded for further proceedings in accordance with this opinion.