**OUR HOME LIFE INS. CO. v. MARTIN.**

· No. 5515.

Circuit Court of Appeals, Sixth Circuit.

June 12, 1930.

J. A. Edge, of Lexington, Ky. (Helena B. Maiden, of Lexington, Ky., on the brief), for appellant.

J. W. Harlan, of Danville, Ky., for appellee.

Before MOORMAN, MACK, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

Appellant issued on November 2, 1925, and later delivered to Carl Martin, a life insurance policy in the sum of $5,000. Martin died on June 2, 1926, and on August 14, 1926, appellant brought this suit to cancel the policy, alleging that it had been forfeited for nonpayment of premiums. Appellee, as administrator of Martin's estate, filed answer and counterclaim seeking to recover on the policy. The lower court held that it was in effect at the time of Martin's death and rendered judgment for appellee for its face value.

The policy provides that "if any premium is not paid on the date when due this policy will cease or terminate" except that "thirty-one days of grace will be allowed for the payment of renewal premiums." Appellant contends that under the terms of the policy, the premium for the first year was payable in quarterly installments; that the first installment was due and payable on October 27, 1925, and the remaining installments due and payable three, six, and nine months thereafter, respectively; that the first and second installments were paid when due; but that the policy lapsed for failure to pay the third installment within thirty-one days after it was due, April 27, 1926.

The policy is an extraordinarily ambiguous one. It bears on its face the annual premium rate of $113.50; and while it indicates that the company might accept payment of the premium for the first year in semiannual or quarterly installments, it nowhere states that it had agreed to do so, and it expressly provides for other premium payments "on or before the 27th day of October in every year hereafter during the continuance of this policy." On the back of the policy it is stated that "no agent has authority to put this policy in force by the delivery thereof without the payment of the premium and the delivery of the proper receipt thereof"; and that the policy is issued "in consideration of the application therefor, which application is made a part thereof, the payment of $113.50 in advance on delivery of this policy, as the premium for one year's insurance, and will be renewed and extended thereafter as an ordinary life policy upon the further payment of a like amount either at the office of the company at Washington, D. C., or upon the delivery of a receipt signed by the President or Secretary and counter-

signed by an authorized agent of the company, on or before the 27th day of October in every year hereafter during the life of the insured." There is also a notation on its back of premium rates of $113.50 annually, $59.10 semiannually, and $30.10 quarterly; but nothing to show any arrangement or agreement to pay according to any of these rates. The application which the deceased signed was not attached to the policy, and under the Kentucky law it cannot be relied upon by the insurance company as constituting a part of the contract. Ky. Stat. § 679; Sou., etc., Ins. Co. v. Herlihy, 138 Ky. 359, 128 S. W. 91; Western, etc., Ins. Co. v. Davis, 141 Ky. 358, 132 S. W. 410.

The policy was solicited by Dunigan, who had a general insurance agency and carried practically all of Martin's insurance. His commissions on policies of this kind were 75 per cent. of the first year's premium, and 5 per cent. of the renewals. Martin owned a jewelry store at Danville, Ky. Dunigan testified that he sold Martin "lots of policies in other companies of other kinds, and would just let them stand and at certain times they would have a settlement." He bought considerable jewelry from Martin and carried an account at his store. The insurance account was carried, in part, at least, in the store account. Martin did not pay the company anything upon the delivery of the policy or thereafter, but Dunigan paid to it its proportion of two quarterly installments of the first year's premium. It is not clear that these payments were credited to Dunigan by Martin in the store account—perhaps they were. Nor does it appear that there was a definite agreement that Dunigan would pay the first year's premium and take it out "through the store." It does appear, though we think, that there was an understanding that he would take care of the first premium and Martin would pay him either in goods or cash in the settlement of their accounts.

It is difficult to read the policy in connection with the written authority from the company under which Dunigan was acting without reaching the conclusion that it was issued to be effective as a contract of insurance for one year from its date. Any doubt about that question arising from ambiguities in the policy must be resolved in favor of the insured. Thompson v. Phoenix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L. Ed. 408. The policy states that it was issued in consideration of "the payment of one hundred thirteen and 50/100 dollars in advance of the delivery of the policy, as the premium for one year's insurance." The contract between the company and Dunigan provided that "the company will accept only full annual premiums the first year, and if the agent sends in anything other than a full annual premium, it will be accepted with the distinct understanding that the agent becomes responsible to the company for the balance." It is thus apparent that the company permitted Dunigan to deliver the policy with "the distinct understanding" that he would become responsible for "the premium for one year's insurance." The clause in the policy that "in every year hereafter" the premiums shall be paid "on or before the 27th day of October" also supports the view that the contract was one of annual insurance. Construed in connection with the other provisions referred to, it means, we think, that although the company would accept a part of the first annual premium and look to its agent for the payment of the balance, it would accept only the full annual premium for any subsequent year. A sufficient reason for its making this distinction is to be found in the circumstance that while it received only 25 per cent. of the first year's premium, it received 95 per cent. of the renewal premiums. The effect, therefore, of what the appellant did in the instant case was to issue its policy effective for a period of one year, agreeing to accept the obligation of its agent for the first annual premium in lieu of payment thereof by the insured. In our opinion nothing to the contrary is shown by its subsequent notification of the insured of the due dates of installments, for that practice might naturally have been engaged in, and no doubt was, in the interest of and for the benefit of the agent.

There is no question here of lack of authority of the agent to make the policy effective by delivering it to the insured, as in Dodd v. Ætna Life Ins. Co., 35 F.(2d) 673 (6 C. C. A.), for appellant in its contract with its agent authorized its delivery and agreed to accept his obligation for the first premium instead of requiring payment thereof by the insured. In the Dodd Case we had occasion to refer to decisions holding that the charging of the premium to an agent by the company upon the forwarding of the policy to him for delivery was the equivalent of payment for the purpose of putting the policy into effect. And we pointed out the distinction between the case then under consideration and Smith v. Provident Savings Life Assur. Soc. (C. C. A.) 65 F. 765, in which the instructions recognized the right of the agent to assume payment of the premium and to take the risk of collecting it from the policyholder, the

agent becoming liable to the company. The case at bar, it seems to us, is controlled by the Smith Case. When the agent sent in a smaller sum than the first annual premium, and the company accepted it and issued a policy, with the understanding that the agent was responsible for the balance of the full annual premium, the policy, upon delivery to the insured, became effective, in our opinion, for the period for which the amount of the agent's obligation would pay.

The decree is affirmed.